COLORADO INTERSTATE GAS COM-
PANY, a Delaware corporation, Plain-
tiff–Appellant and Cross–Appellee,

v.

CHEMCO, INC., Robin Investment Com-
pany, Inc., R.E. Neher, Dempsey Invest-
ment Company, G. Hamilton Neher, Kir-
chner Farm Associates, Robert Jones,
Zelda Neher, and Robin Neher Cann,
Defendants–Appellees and Cross–Appel-
lants.

No. 97CA0476.

Colorado Court of Appeals,
Div. V.

Sept. 3, 1998.

Rehearing Denied Nov. 27, 1998.

Certiorari Denied Oct. 18, 1999.

Colorado Interstate Gas Company, Rebecca H. Noecker, Michael L. Williams, Stephen A. Hess, Colorado Springs, Colorado; Michael L. Beatty, Colorado Springs, Colorado; Holland & Hart, LLP, Timothy M. Rastello, Boulder, Colorado, for Plaintiff–Appellant and Cross–Appellee.

Davis & Ceriani, P.C., Gary J. Ceriani, John W. Himmelmann, Denver, for Defendants–Appellees and Cross–Appellants.

Opinion by Judge VOGT.

In this dispute between parties to a gas purchase agreement, plaintiff, Colorado Interstate Gas Company (CIG), appeals from the trial court's summary judgment dismissing its claims against defendants, Chemco, Inc., Robin Investment Company, Inc., R.E. Neher, Dempsey Investment Company, G. Hamilton Neher, Kirchner Farm Associates, Robert Jones, Zelda Neher, and Robin Neher Cann (collectively Chemco). Chemco cross-appeals from the trial court's subsequent summary judgment dismissing its counterclaim. We affirm.

CIG is an interstate natural gas pipeline company that purchases natural gas and sells it to consumers. In 1979, CIG entered into a 15–year "take-or-pay" agreement to purchase natural gas from Chemco. The contract required CIG to take or pay for a designated minimum quantity of gas within a given year. Under Section 4.2 of the contract, if CIG did not take the requisite amount of gas, it was still obligated to pay for it, but then was entitled to recoup its payment by receiving "make-up gas" over the next five years. If Chemco failed to deliver make-up gas during this time, CIG was entitled to a refund. While the initial agreement involved production of gas from only one well, the parties amended the agreement in 1980 to include three additional wells.

In October 1985, CIG stopped purchasing gas and sought a declaratory judgment that it had a right under the agreement to cease performance because of adverse economic conditions. Chemco counterclaimed for breach of contract. In April 1988, the trial court ruled that CIG had breached the contract. In March 1989, a jury awarded Chemco over $3 million in damages, representing take-or-pay payments and other sums that CIG owed but had not paid.

CIG appealed, and this court and the supreme court affirmed. *Colorado Interstate Gas Co. v. Chemco, Inc.*, 833 P.2d 786 (Colo. App.1991), *aff'd*, 854 P.2d 1232 (Colo.1993) (*Chemco I* ).

After the trial court's 1988 ruling, CIG notified Chemco that it wanted to take all the gas the four wells at issue could produce. Chemco tendered gas from two wells, but did not tender any gas from one well (Wear I) that needed repair and another (Mundhenke) that was not connected to CIG's system.

CIG did not make any payments attributable to the Wear I and Mundhenke wells for the contract years 1988–94, and Chemco did not repair or connect the two wells to enable them to produce gas. Chemco also refused CIG's demands during this period that it deliver make-up gas.

In December 1989, the parties agreed that CIG would put money to satisfy the jury's damage award into an escrow account pending appeal. In 1993, after the supreme court's decision, CIG paid the judgment plus interest. It then requested that Chemco provide make-up gas for the contract years before the judgment, on a theory that satisfaction of the judgment was, in effect, the performance of its contractual payment obligations. When Chemco refused to do so, CIG initiated the present action. Chemco counterclaimed for additional damages based on CIG's failure to make payments during the contract years after the judgment.

In December 1995, the trial court granted Chemco's summary judgment motion and dismissed CIG's claims for breach of contract and unjust enrichment, concluding that CIG was not entitled to recoupment or refund after paying the judgment in *Chemco I.* In response to Chemco's motion to clarify, the court entered a second order stating that principles of collateral estoppel provided an alternative basis for dismissal of CIG's claims. In February 1997, the court granted CIG's motion for summary judgment and dismissed Chemco's counterclaim.

I.

On appeal, CIG asserts that it was entitled to recoupment and refund after it paid the *Chemco I* judgment, and that the trial court therefore erred in dismissing its claims for relief pursuant to Chemco's summary judgment motion. CIG's primary contention is that because *Chemco I* recognized that Section 4.2 of the contract was a remedy provision, payment of the judgment entitled CIG to have Section 4.2 "enforced in its entirety." We do not agree.

We review a summary judgment under the same standards that govern the trial court's determination. Summary judgment is warranted only when there is a clear showing that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. All doubts as to the existence of a triable factual issue must be resolved against the moving party, and the non-moving party is entitled to the benefit of all favorable inferences that may be drawn from the facts. *Churchey v. Adolph Coors Co.*, 759 P.2d 1336 (Colo.1988).

*Chemco I* established that, as a result of CIG's breach of its take-or-pay agreement, Chemco was entitled to "the payment of damages equivalent to the value of [CIG's] remaining performance obligations." *Colorado Interstate Gas Co. v. Chemco, Inc., supra,* 854 P.2d at 1236. Judgment entered for what the jury determined that amount to be, CIG put money into escrow, and, in 1993, paid the judgment with interest.

■ Contrary to CIG's contention on appeal, its payment of the *Chemco I* judgment in 1993 did not constitute performance under Section 4.2 that would entitle it to return performance by Chemco. Payment was not made within the time set forth in Section 4.2; and even if interest on the judgment could be considered compensation for that delay, the payment did not trigger the right to make-up gas, since that right had ended by 1993.

Section 4.2 of the contract states in relevant part:

If, during any of the Contract Years ..., Buyer shall fail to take the gas well Contract Quantity of gas from any well, then Buyer shall pay Seller on or before the 20th day of the 2nd month of the next following Contract Year for that quantity of gas which is equal to the difference between the said quantity and Buyer's actual takes during such period.... During the 5 years next succeeding the Contract Year in which Buyer has failed to take the gas so paid for, all gas well gas taken by Buyer from Seller which is in excess of the gas well Contract Quantity of gas for the current Contract Year shall be known as Make-up Gas and shall be delivered without charge to Buyer until such excess equals the amount of gas previously paid for but not taken.

■ Take-or-pay and recoupment provisions such as Section 4.2 are specially designed to meet the needs of two sophisticated business entities which are deemed to have allocated the risks involved in these types of contracts. As such, these provisions must be strictly construed. *R.J.B. Gas Pipeline Co. v. Colorado Interstate Gas Co.,* 813 P.2d 14 (Okla.App.1990) (rejecting CIG's claim for recoupment after it had paid damages for breach of contract).

During the years for which damages were awarded in *Chemco I,* CIG's obligation under Section 4.2 was to make its take-or-pay payment on or before the twentieth day of the second month of the year after the year in which it did not take the full quantity of gas. Although CIG initially had the alternative either to pay or to take the gas, the "take" alternative was lost when it did not pay for the gas within the specified period. As this court recognized in *Chemco I:*

This type of alternative contract eliminates the availability of one alternative with the passage of time. CIG's "take" alternative is limited to a period of one year, after which CIG is obligated to pay the minimum bill.

*Colorado Interstate Gas Co. v. Chemco, Inc., supra,* 833 P.2d at 792.

One purpose of take-or-pay provisions such as this is to meet the needs of producers such as Chemco for a steady minimum income to enable them to pay operating costs, taxes, and royalties. *See Colorado Interstate Gas Co. v. Chemco, Inc., supra,* 854 P.2d 1232. When CIG did not make the required yearly payments, Chemco was deprived of the steady cash flow for which it had bargained.

Even if we assume that payment of the judgment with interest after years of litigation was sufficient to compensate Chemco for the loss of this part of its bargain, that does not mean that such payment triggered Chemco's return performance obligations under Section 4.2.

Chemco's obligation to provide make-up gas was limited to five years after the contract year in which CIG failed to take gas. Here, the jury awarded damages for CIG's failure to perform its "pay" obligation for the years 1980–1988, but those damages were not paid until 1993. Moreover, even during the five year recoupment period, CIG's entitlement to make-up gas was measured by "the amount of gas previously paid for but not taken." The damages awarded in *Chemco I* were not payment for gas, but were payment for CIG's "failure to purchase (take) gas." *Colorado Interstate Gas Co. v. Chemco, Inc., supra,* 833 P.2d at 792.

■ Contrary to CIG's argument, the trial court's ruling that CIG was not entitled to performance by Chemco under Section 4.2 is not "inconsistent with this court's previous determination that CIG has recoupment and refund rights." Although a division of this court noted in *Chemco I* that "if and when CIG makes the 'pay' payments, it may then be entitled to any refund or recoupment rights available under the contract," *Colorado Interstate Gas Co. v. Chemco, supra*, 833 P.2d at 792, we do not read this statement as a determination that CIG was entitled to any such rights. Indeed, CIG's statements to the trial court in this case, including its proposed finding that "the issue of CIG's make-up and refund rights was not litigated in prior proceedings," indicate that the *Chemco I* court would not have had any record before it upon which to base such a determination.

CIG also claims that the trial court's decision is "inconsistent with fundamental principles of damage law reiterated in *Chemco I*" because it puts Chemco in a better position than it would have been in if the contract had not been breached. This argument was raised by CIG and rejected in *Chemco I. See Colorado Interstate Gas Co. v. Chemco, Inc., supra*, 833 P.2d at 791 ("CIG argues that this puts Chemco in a better position than if the contract had been performed because it results in Chemco's receiving the full contract price and also retaining the gas for resale"). We therefore decline to address it again here.

In sum, the trial court did not err in dismissing CIG's claims on the basis that CIG had no right of recoupment or refund from Chemco. Because of our resolution of this issue, we need not decide whether the trial court erred in concluding that collateral estoppel provided an alternative basis for dismissing CIG's claims.

## II.

■ In its cross-appeal, Chemco raises several claims of error relating to the dismissal, on summary judgment, of its "price claim" and its "take-or-pay claim," both of which sought recovery for damages accruing after the *Chemco I* trial. In regard to the price claim, which dealt with underpayments since 1989 that arose out of CIG's incorrect pricing of the gas, Chemco asserts that the trial court erred in concluding that the claim was barred by Chemco's failure to give CIG timely notice of pricing errors. We do not agree.

The parties' contract contained the following provision regarding errors in billing statements:

> 4.5 ERRORS—In the event an error is discovered in the amount shown to be due in any statement rendered by Buyer, such errors shall be adjusted within 30 days of determination thereof, provided that claim therefor shall have been made within 12 months from the date of such statement.

The trial court found that Chemco had been compensated for underpayments arising from errors in statements for the twelve months prior to October 1992, when Chemco had notified CIG of the errors. The court then concluded that Chemco's claims for pricing error damages from 1989–91 were barred under Section 4.5 because of Chemco's failure to give timely notice of the errors.

The jury award in the 1989 trial included damages for underpayments in 1988–89. Chemco contends that the jury's determination that "CIG failed to pay Chemco the full contract price of all gas taken since May, 1988" satisfied the requirements of Section 4.5, since the underpayments on statements sent out after the jury trial all arose out of the same incorrect pricing method that had been the subject of the jury's determination. Chemco further claims that any failure on its part to provide timely notice was excused by CIG's own failure to correct its pricing method within 30 days of the jury's verdict. We are not persuaded.

■ Contract provisions requiring that notice of a claim be given within a specified time period are routinely enforced in accordance with their terms. *See Rio Grande Motor Way, Inc. v. Resort Graphics, Inc.*, 740 P.2d 517 (Colo.1987); *First National Bank v. Union Tavern Corp.*, 794 P.2d 261 (Colo.App.1990).

Here, Chemco may not rely on the 1989 jury determination to avoid the express

terms of its contractual notice provision and excuse its failure to give notice as to errors on statements after 1989. Section 4.5 refers to errors "in the amount shown to be due in any statement," and requires that a claim as to such errors be made "within 12 months from the date of such statement." This language contemplates notice of, and subsequent adjustment of, specific errors on specific statements. Section 4.5 contains no language indicating that the twelve-month notice requirement is waived if the errors in the statements all arise out of the same erroneous pricing method.

We likewise reject Chemco's assertion that CIG's failure to change its pricing method after 1989 was a material breach of Section 4.5 that would excuse Chemco's failure to give notice of errors in subsequent statements. That section requires that errors in specific statements be brought to the buyer's attention within thirty days so that they can be corrected. CIG did in fact adjust the error for the twelve previous months when Chemco brought the error to its attention in October 1992.

## III.

Chemco next challenges the trial court's dismissal of that portion of its counterclaim seeking damages for CIG's failure to make take-or-pay payments relating to the Wear I and Mundhenke wells for the contract years after 1989. We are not persuaded by Chemco's contentions.

## A.

■ Chemco asserts that the trial court erred in concluding that CIG was not obligated to make take-or-pay payments because Chemco had failed to repair or connect the two wells to enable them to produce gas. According to Chemco, this determination was error because the supreme court had held, in *Chemco I,* that Chemco had no duty to repair or connect the wells.

In *Chemco I,* however, the supreme court was addressing Chemco's duty to repair during the period when CIG was in "continuing material breach" of its contract because of its erroneous reliance on the contract's "econom-

ic out" provision as a basis for ceasing performance. The supreme court concluded that "CIG remained liable for its impermissible exercise of [the economic out provision] for as long as Chemco suffered damages caused by CIG's breach." *Colorado Interstate Gas Co. v. Chemco, Inc., supra,* 854 P.2d at 1238–39. The court's statement regarding Chemco's duties while CIG was in breach did not resolve Chemco's duty to repair and connect the wells during the post–1989 period for which it seeks damages here.

Upon entry of judgment in *Chemco I,* Chemco's claim for CIG's breach of the economic out provision was merged into the judgment and ceased to exist. *See Bassett v. Eagle Telecommunications, Inc.,* 750 P.2d 73 (Colo.App.1987); *see also Ahearn v. Goble,* 90 Colo. 173, 7 P.2d 409 (1932). Thereafter, the parties again had performance obligations under the contract, which both had recognized as valid after the April 1988 trial court ruling. As to these obligations, Chemco's unexcused failure to provide gas from the Wear I and Mundhenke wells would excuse CIG's failure to make take-or-pay payments. *See Western Distributing Co. v. Diodosio,* 841 P.2d 1053 (Colo.1992) (party seeking to recover for breach of contract must prove that he substantially performed his part of the contract or that there was some justifiable reason for nonperformance); *Harris v. Hanson,* 821 P.2d 821 (Colo.App.1991).

## B.

■ We also reject Chemco's contention that the trial court erred in its ruling on the issue of whether CIG's failure to provide reasonable assurances of performance excused Chemco's failure to repair and connect the wells.

Section 4-2–609(1), C.R.S.1997, provides that a party has a right to adequate assurance of performance:

A contract for sale imposes an obligation on each party that the other's expectation of receiving due performance will not be impaired. When reasonable grounds for insecurity arise with respect to performance of either party, the other may in writing demand adequate assurance of due

performance and, until he receives such assurance, may if commercially reasonable suspend any performance for which he has not already received the agreed return.

Here, the trial court concluded that Chemco had waived its right to demand assurance of performance, and also found that Chemco had not in fact sought specific assurance of performance of the agreement relating to the two wells, but had simply demanded that CIG pay the prior judgment in full. Specifically, the court found:

Chemco did not, in any exhibits or letters furnished to the Court as a part of these summary judgment motions, responses or replies, furnish documentation of any request for security for performances or assurances that CIG would perform the agreement if the Wear I and Mundhenke were reworked and/or connected to the gas gathering system. The demands made by Chemco to CIG only referred to payment of the judgment.

In arguing that the trial court's resolution of this issue was error, Chemco again relies on the supreme court's opinion in *Chemco I*—specifically, on the court's observation that the jury, by finding liability, "necessarily reached the conclusion that CIG's assurances were inadequate." *Colorado Interstate Gas Co. v. Chemco, Inc., supra*, 854 P.2d at 1239. As before, however, this statement says nothing about whether reasonable assurances were requested and given *after* the jury trial in *Chemco I*.

As to that latter period, the record supports the trial court's determination that Chemco never requested adequate assurances of performance. Although Chemco cites a July 19, 1989, letter that was appended to CIG's summary judgment brief as evidence that the trial court's finding on this issue was error, we do not read the letter as a request for assurance that would excuse Chemco's nonperformance if CIG did not do as the letter demanded.

Since Chemco failed to request adequate assurance of performance after the 1989 jury trial, the trial court did not err in concluding that Chemco could not rely on CIG's failure to provide such assurance to excuse its failure to perform its contractual obligations.

## C.

Chemco next asserts that the trial court erred in refusing to apply the doctrine of collateral estoppel in its summary judgment ruling on Chemco's take-or-pay claim. Again, we disagree.

■ Collateral estoppel bars relitigation of an issue if: (1) the issue is identical to that actually adjudicated in a prior proceeding; (2) the party against whom estoppel is asserted is a party or in privity with a party in the prior proceedings; (3) there was a final judgment on the merits; and (4) the party against whom estoppel is asserted had a full and fair opportunity to litigate the issues in the prior proceeding. *S.O.V. v. People in Interest of M.C.*, 914 P.2d 355 (Colo.1996).

■ The trial court concluded that CIG was not collaterally estopped to contest liability on Chemco's take-or-pay claim, because two requirements for application of the doctrine—identity of issues, and full and fair opportunity to litigate—were not met.

We recognize that the prior proceedings did address the issue of CIG's liability for take-or-pay damages between May 1988 and the March 1989 trial, and that that issue was resolved in Chemco's favor. However, as noted above, the jury's determination was based in part on CIG's failure to provide adequate assurances of performance. As for the period after the jury trial and after CIG had put money in escrow to satisfy the judgment against it, there is no evidence that Chemco requested assurances of performance that would have excused its nonperformance. Whether its nonperformance should be excused after 1989 is not the same issue as whether it should have been excused prior to 1989.

Chemco's claim for take-or-pay damages after 1989 presented new issues which CIG had not litigated, and had not had a full and fair opportunity to litigate, in the prior proceedings. Thus, the trial court did not err in refusing to apply the doctrine of collateral estoppel.

## IV.

Finally, Chemco asserts that the trial court erred by prematurely addressing the merits of its take-or-pay claim, because the parties had agreed to postpone discovery on the merits pending the court's ruling on collateral estoppel. We are unpersuaded.

▮ Chemco contends that the trial court's ruling was "based on an incomplete factual record," but does not identify any unresolved factual issues which would have rendered the trial court's second summary judgment order inappropriate. Moreover, Chemco did not file a C.R.C.P. 56(f) affidavit advising the trial court of what additional discovery would be needed before summary judgment could enter. *See Card v. Blakeslee*, 937 P.2d 846 (Colo.App.1997)(where no C.R.C.P. 56(f) affidavit was filed, summary judgment was proper despite plaintiff's pending motion to compel discovery).

Although Chemco asserts that no C.R.C.P. 56(f) affidavit was required because of the parties' stipulation concerning a stay of discovery, the language in the stipulation defeats Chemco's argument. Chemco stipulated that granting CIG's summary judgment motion "would effectively resolve all remaining claims," and that the discovery which would be stayed was discovery which the parties "do not believe is necessary for the Court's resolution of the pending summary judgment motions." Given these statements, Chemco cannot now argue that the stipulation excused it from filing a C.R.C.P. 56(f) affidavit if it believed that outstanding unresolved issues of fact made summary judgment premature.

Judgment affirmed.

Judge ROTHENBERG and Judge TAUBMAN concur.