987 P.2d 829 (1998)
The PEOPLE of the State of Colorado, Plaintiff-Appellee,
v.
Ramonde E. WEBSTER, Defendant-Appellant.
No. 97CA0872.
Colorado Court of Appeals, Div. I.
October 15, 1998.
As Modified on Denial of Rehearing December 10, 1998.
Certiorari Denied November 8, 1999.[*]
*838 Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Conrad R. Lattes, Special Assistant Attorney *839 General, Denver, for Plaintiff-Appellee.
David F. Vela, Colorado State Public Defender, Anthony Viorst, Deputy State Public Defender, Denver, for Defendant-Appellant.
Opinion by Judge PLANK.
Defendant, Ramonde Webster, appeals from a judgment of conviction on jury verdicts finding him guilty of attempted first degree murder and first degree assault. He also challenges the 32-year sentence imposed following the conviction. We affirm the judgment of conviction, reverse the sentence, and remand for resentencing.
At about 2:00 a.m., the victim was walking home in Denver. A vehicle stopped near him, and the driver and the victim spoke briefly to each other. The victim did not recognize the driver, and attempted to walk away. The driver then fired approximately six shots from a handgun at the victim, striking him three times. The gunshot wounds were not serious except that one bullet lodged behind the victim's ear.
Approximately one month later, the victim saw the assailant and gave his vehicle's license plate number to the police. The police identified three possible suspects based on their prior contacts with persons in that vehicle, and prepared three photo line-ups. The victim immediately selected the defendant as his assailant in the photo line-up, and identified him again at trial.

I.

A.
Defendant first contends that trial court erred by not granting his motion to suppress the victim's identification during the police photo line-up, a procedure that defendant asserts was unnecessarily suggestive and denied him a fair trial. We disagree.
A photo line-up identification procedure unconstitutionally denies the defendant a fair trial when it is unnecessarily suggestive and is conducive to a misidentification. The procedure must be evaluated in light of the "totality of the surrounding circumstances." People v. Horne, 619 P.2d 53, 56 (Colo.1980).
The police do not have to provide a photo line-up containing only "exact replicas" of the defendant's picture; all that is required is that "the photos are matched by race, approximate age, facial hair, and a number of other characteristics." People v. Borrego, 668 P.2d 21, 23 (Colo.App.1983).
Defendant contends that the photo line-up procedure here was unnecessarily suggestive because, in the line-up containing his photograph along with five others, his was the only one with a yellow background. Defendant also contends that his photograph unnecessarily stands out because it is the only one in which the subject has a menacing expression, the only one depicting the subject's hair in "geri curls," and the only one in which light is shining directly into the subject's face. Finally, defendant contends that one of the line-ups shows only juveniles despite the victim's description of the assailant as an adult man.
Prior to viewing the photographs, the detective read to the victim a standard admonition advising that facial hair and hairstyles are easily changed, that complexion is not always depicted accurately in the photographs, and that differences in the style and type of photographs should be ignored. The admonition also warned that the perpetrator may not be in any of the photographs and that the victim should not feel pressured to identify anyone.
Our review of the photo line-ups reveals that all of the photographs are of black males of varying complexions and appearances. The majority of the photographs have a neutral blue background, three others appear to show the same background color as defendant's photograph, one shows a neutral green background, and in one the background is washed out and the color is indeterminate. The eighteen photographs show a wide variety of hair styles and the defendant's is not particularly remarkable in the group. At least three of the photographs have the light shining into the subjects' faces. Finally, the defendant's expression is not particularly menacing *840 and does not stand out from the group.
Our review of the transcript of the suppression hearing also reveals nothing to show that the procedure used to present the photo line-ups to the victim in any way suggested a particular suspect. In short, we do not perceive that the totality of the circumstances surrounding the presentation of the photo line-ups was suggestive at all, and we agree with the trial court in concluding that the victim's identification of defendant was reliable and need not be suppressed. See People v. Horne, supra.

B.
Defendant further contends that the detective's comments following the victim's photo line-up identification unfairly suggested that the victim had selected the "correct" suspect. We disagree with this contention, as well.
Our review of the record reveals only that the detective may have told the victim and his mother that defendant was presently in jail on domestic violence or possibly other charges. We agree with the trial court that there was no connection between defendant's arrest on unrelated charges and the victim's identification, and we perceive no error in the trial court's decision not to suppress the victim's identification.

C.
Because we have concluded that the photographic line-up procedure was not unnecessarily suggestive, we need not reach defendant's contention that the prosecution must show by clear and convincing evidence an independent basis for the victim's in-court identification. See People v. Monroe, 925 P.2d 767 (Colo.1996).

II.
Defendant next contends that the trial court erred by permitting testimony of an unfairly prejudicial statement made by defendant to a police detective. We disagree.
Defendant, after being advised of his rights and waiving them, told the detective that he had been involved in gang activity for ten years, and that he was well known in the neighborhood. The prosecution sought the introduction of the hearsay statement to prove that defendant shot the victim because he was wearing blue, the color of a rival gang.
Evidence of the defendant's affiliation with a gang may be admitted when it is relevant to proving a motive for the crime. People v. Moya, 899 P.2d 212 (Colo.App.1995). CRE 403 requires that relevant evidence should nevertheless be excluded if its probative value is substantially outweighed by its prejudicial effect. Merritt v. People, 842 P.2d 162 (Colo.1993).
We review the trial court's admission of allegedly prejudicial evidence for abuse of discretion. To constitute an abuse of discretion, the opponent must show that the trial court's decision was manifestly arbitrary, unreasonable, or unfair. In reviewing the trial court's determination, we must assume the maximum probative value and the minimum reasonable prejudicial effect. People v. Eggert, 923 P.2d 230 (Colo.App.1995).
Here, the evidence of defendant's gang activities was limited to the one statement made by defendant to the detective, and that statement was offered in support of the prosecution's theory that the shooting was motivated by gang rivalry. We are not persuaded that allowing testimony of defendant's hearsay statement, assuming its maximum probative value and its minimum prejudicial effect, was manifestly arbitrary, unreasonable, or unfair, and we perceive no abuse of discretion. See People v. Eggert, supra.

III.
Defendant contends that the trial court erred by denying his motion for a continuance or, alternatively, to conduct a portion of the trial at the home of a witness because the witness was temporarily unable to testify in court. Defendant also challenges the trial court's decision to exclude the unavailable witness' written statement. We disagree with each of these contentions.

*841 A.
The witness gave a statement to police shortly after the shooting incident. In that statement, she alleged that approximately half an hour or more before the incident, a young Hispanic man repeatedly drove a sport utility vehicle, of a different make, model, and color than the one described by the victim, by her home in the vicinity of the shooting. The witness also concluded, however, that she would be unable to identify the driver if she saw him again because she was not wearing her glasses when she saw him. The witness later heard shots fired but did not see the shooting. Defense counsel told the trial court that the witness' testimony would be nothing more than what was contained in her statement.
At trial, the witness was unavailable to testify because she was confined to bed by her doctor's orders. The trial court, finding that the proffered testimony was irrelevant and that the written statement was hearsay, denied defendant's motions to admit the witness' written statement into evidence, to conduct a portion of the trial at her home, or to continue the trial until she was available to testify.
The trial court has discretion to exclude irrelevant evidence or evidence that is cumulative or would result in unreasonable delay or waste of time. CRE 402; CRE 403. We will not reverse a trial court's exclusion of evidence absent an abuse of its discretion. To be an abuse of discretion, the trial court's ruling must be "manifestly arbitrary, unreasonable, or unfair." People v. McCoy, 944 P.2d 584, 587 (Colo.App.1996).
Our review of the witness' statement shows that her testimony would have been relevant because of its tendency to cast doubt on the victim's identification of defendant as the driver of the vehicle who shot him. However, the delay of at least half an hour between the witness' observations and the shooting, the discrepancies between the witness' and victim's descriptions of the vehicle, and the witness' admission that she could not see clearly because she was not wearing her glasses, are sufficient factors to support the trial court's exclusion of the witness' testimony and written statement. The minimal probative value of the witness' testimony was significantly outweighed by the delay that a continuance or relocation of the trial to the witness' home would have entailed. See CRE 403.

B.
The witness' written statement is hearsay pursuant to the definition in CRE 801 and, therefore, is inadmissible pursuant to CRE 802 unless one of the exceptions found in CRE 803 or CRE 804 is applicable. Defendant offered no argument at trial to justify an exception under either CRE 803 or CRE 804.
On appeal, defendant concedes that the only applicable hearsay exception is the "residual exception" in CRE 804(b)(5):
A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.
As noted above, defendant did not argue in the trial court that CRE 804(b)(5), or any other hearsay exception, applied to the witness' written statement. Consequently, no evidence was offered, and the trial court made no findings, as required by CRE 804(b)(5), that the statement had any "circumstantial guarantees of trustworthiness," that the offered statement was more probative on the point for which it was offered than any other evidence available to defendant, or that justice would be served by its admission, as required by CRE 804(b)(5). See People v. Orona, 907 P.2d 659 (Colo.App.1995) (applying identical language in CRE 803(24)).
Also, CRE 804(b)(5) states:
[A] statement may not be admitted under this exception unless the proponent of it *842 makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.
However, the record reveals that defendant did not provide the advance notice mandated by the rule.
Under these circumstances, the trial court's exclusion of the witness' written statement was not an abuse of its discretion.

IV.
Defendant next contends that the trial court erred by overruling his objection to the prosecutor's allegedly improper closing argument. We disagree.
During the police investigation, another officer recovered a stolen vehicle that closely matched the description given by the victim, of a similar but not identical color. A shell casing of a different caliber than was used in the shooting was recovered from the vehicle, as were fingerprints, none matching defendant's. The driver's side rear window had a hole in it, possibly caused by a bullet fired through it. The police determined, following their investigation, that the recovered vehicle was not the one used in the shooting of the victim.
During trial, the defense attempted to cast doubt on the victim's identification and the police investigation by emphasizing the possibility that the recovered vehicle was the one used in the shooting, and that the police had not adequately investigated that possibility.
In response, the prosecutor, over defense objections, made the following remarks during closing argument:
So why would the defense spend 20 minutes with [the detective]? Why would they drag these people down here[three witnesses]to talk about this [second vehicle] which has nothing whatsoever to do with this shooting? Why? Because it's designed to confuse you, to get you to speculate.... To throw you off the path.... To concentrate on things that don't make a whit of difference, and then to say that the police didn't do their job. The police did more than they had to do with this.
The trial court has broad discretion in ruling on objections made during closing argument, and absent a gross abuse of that discretion, we will not reverse the trial court's rulings. People v. Moody, 676 P.2d 691 (Colo.1984).
Our review of the closing arguments of both the prosecutor and defense counsel convinces us that the prosecutor's remarks set forth above were fair and proper comment on defendant's characterization of the facts and theory of the case. We perceive no abuse of discretion in the trial court's decision to overrule defendant's objections to those remarks.

V.
Defendant contends that the trial court erred by denying his motion for judgment of acquittal because there was insufficient evidence to support a conviction. We disagree.
When the defendant asserts that the evidence was insufficient to support a conviction, we review the evidence presented, in the light most favorable to the prosecution, to ascertain whether a reasonable juror could conclude that the prosecution proved all elements of the charged offense beyond a reasonable doubt. We may not substitute our judgment for that of the jury and reweigh the evidence or the credibility of witnesses, and we may not disregard the testimony of a witness unless it is utterly unbelievable. However, more than a modicum of evidence is required to prove an element beyond a reasonable doubt. Kogan v. People, 756 P.2d 945 (Colo.1988).

A.
Defendant asserts that there was insufficient evidence that he acted "after deliberation" to support a conviction of attempted first degree murder. We disagree with this contention.
Section 18-3-101(3), C.R.S.1998, defines "after deliberation" as:
not only intentionally but also that the decision to commit the act has been made *843 after the exercise of reflection and judgment concerning the act. An act committed after deliberation is never one which has been committed in a hasty or impulsive manner.
Circumstantial and indirect evidence are almost always required to prove deliberation and intention to kill. Evidence of the manner and method of the killing, or attempted killing, may be sufficient to support an inference of the necessary intention and deliberation. People v. Valenzuela, 825 P.2d 1015 (Colo.App.1991).
Here, the jury could reasonably have credited the prosecution's theory, supported by more than a modicum of evidence, that the victim was shot because he was mistakenly believed to be a member of a rival gang. Because the defendant drove up to the victim, stopped his vehicle, and engaged the victim in a short conversation prior to the shooting, the jury could reasonably have inferred that the defendant observed the victim, assumed him to be a rival gang member, and stopped with the intention to kill him. The plan to kill must precede the attempted killing, but the time for deliberation need not be long. People v. Valenzuela, supra.
Accordingly, we perceive no error in the trial court's denial of defendant's motion for acquittal on the charge of attempted first degree murder.

B.
Defendant also contends that there was insufficient evidence of "serious bodily injury" to sustain his conviction for first degree assault. We disagree with this contention, as well.
The infliction of "serious bodily injury" is an element of the offense of first degree assault. Section 18-3-202(1)(a), C.R.S.1998. "Serious bodily injury" is defined in §18-1-901(3)(p), C.R.S.1998, as:
bodily injury which, either at the time of the actual injury or at a later time, involves a substantial risk of death, a substantial risk of serious permanent disfigurement, a substantial risk of protracted loss or impairment of the function of any part or organ of the body, or breaks, fractures, or burns of the second or third degree.
The risk of death or disfigurement must be a risk resulting from the injuries actually sustained, not a speculative risk based on different circumstances or the risks generally attending the defendant's conduct. Stroup v. People, 656 P.2d 680 (Colo.1982).
The physician who treated the victim made a written statement that the victim's wounds involved a "substantial risk of death" or "a substantial risk of serious, permanent disfigurement." At trial, the physician's testimony made it clear that the only wound that involved any substantial risk of death or serious disfigurement was the one to the victim's ear, and that the risk of death was speculative based on alternative facts. However, the physician's testimony that the ear wound could have been seriously and permanently disfiguring was unrefuted, and thus, the jury could reasonably have found that the defendant inflicted "serious bodily injury" on the victim.
We therefore perceive no error in the trial court's denial of defendant's motion for acquittal on the charge of first degree assault.

VI.
Defendant finally contends that the sentence imposed by the trial court was illegal because attempted first degree murder is not a statutory crime of violence. We agree. Further, we note that first degree assault is not a lesser included offense of attempted first degree murder and therefore remand for resentencing on both issues.

A.
Defendant first contends that attempted first degree murder is not a statutory crime of violence subject to the mandatory aggravated range sentencing provisions of §XX-XX-XXX, C.R.S.1998, and because he was not charged with a separate count of crime of violence, pursuant to §XX-XX-XXX(4), C.R.S.1998, he should not have been sentenced in the aggravated range. We agree.
Generally, §XX-XX-XXX(1)(a), C.R.S.1998, requires that persons convicted of a crime of *844 violence be sentenced to an aggravated range sentence. The aggravated range sentence is a minimum of the mid-point of the presumptive sentencing range and a maximum of twice the presumptive maximum.
Section 16-11-309(4), C.R.S.1998, requires that the defendant be charged and convicted of a separate count of crime of violence to be sentenced in the aggravated range. However, a number of statutory sections specifically direct the court to sentence the defendant in accordance with §XX-XX-XXX if convicted of that offense. See §18-3-103(4), C.R.S.1998 (second degree murder); §18-3-202(2)(c), C.R.S.1998 (first degree assault).
The supreme court has held that, when the charged offense is an offense proscribed by a statute that specifically directs sentencing in the aggravated range, no separate count of crime of violence need be charged or proved, and the sentence imposed must be in the aggravated range. People v. Terry, 791 P.2d 374 (Colo.1990).
When a defendant is charged with an attempted crime pursuant to §18-2-101(1), C.R.S.1998, a mandatory aggravated range sentence must be imposed if the underlying criminal offense, had it actually been carried through and not merely attempted, would have been subject to a mandatory aggravated sentence. Section 18-2-101(3.5), C.R.S.1998.
However, the first degree murder statute does not mandate an aggravated range sentence. See §18-3-102, C.R.S.1998. As a class 1 felony, the presumptive minimum sentence for first degree murder is life in prison without possibility of parole and the maximum is death. Sections 18-1-105(1)(a)(V)(A) and 18-1-105(4), C.R.S.1998. Attempted first degree murder is therefore a class 2 felony with a presumptive sentencing range of eight to twenty-four years in prison. Sections 18-2-101(4) and 18-1-105(1)(a)(V)(A), C.R.S.1998.
We therefore conclude that, without either a guilty verdict on a separate crime of violence pursuant to § 16-11-309, C.R.S. 1998, or a finding of statutory aggravating factors pursuant to §§ 18-1-105(6), 18-1-105(7), and 18-1-105(9), C.R.S. 1998, the imposition of an aggravated range sentence for the class 2 felony of attempted first degree murder was error.

B.
Our review of the record indicates that the trial court determined that defendant's conviction for first degree assault should merge into the conviction for attempted first degree murder and, therefore, imposed a single sentence for the two offenses of which he was convicted. These convictions do not merge.
A defendant cannot be sentenced for both a greater and a lesser included offense. An offense is a lesser included offense if proof of all the elements of the greater offense necessarily proves all the elements of the lesser included offense. If convicted of both an offense and a lesser included offense, the convictions are said to merge and the defendant can be sentenced only on the greater offense. People v. Rodriguez, 914 P.2d 230 (Colo.1996).
First degree assault is not a lesser included offense of attempted first degree murder on the basis that first degree assault requires proof that defendant inflicted serious bodily injury on the victim, an element not required for a conviction of attempted first degree murder. Here, the court did not make any express findings on merger and entered only a single sentence.
As pertinent here, the crime of first degree assault requires proof that defendant either: (1) inflicted serious bodily injury, either with a deadly weapon or under circumstances manifesting extreme indifference to human life; or (2) had the specific intent to disfigure the victim seriously and permanently. Section 18-3-202(1), C.R.S.1998. None of these elements is an element of attempted first degree murder, and we therefore conclude that first degree assault is not a lesser included offense of attempted first degree murder. See §§ 18-2-101(1), 18-3-102 and 18-3-202, C.R.S.1998.
Hence, on remand, the trial court should enter separate sentences on defendant's convictions for attempted first degree murder and first degree assault.
*845 Because the determination of whether the separate sentences should run concurrently or consecutively is primarily a question of fact, we decline to rule on that issue. See §§ 18-1-408(3) and 16-11-309(1)(a); People v. Page, 907 P.2d 624 (Colo.App.1995). But, as to that issue, the trial court should make appropriate findings and sentence defendant accordingly.
The judgment of conviction is affirmed, the sentence imposed is reversed, and the cause is remanded for resentencing.
Judge METZGER and Judge ROTHENBERG concur.
NOTES
[*] Justice KOURLIS would grant as to the following issues:

Whether attempted first-degree murder is a statutory crime of violence.
Whether the trial court's sentence was illegal.