The **PEOPLE** of the State of Colorado, Plaintiff–Appellee,

v.

Kevin R. **WILLCOXON**, Defendant–Appellant.

No. 01CA0524.

Colorado Court of Appeals, Div. V.

Dec. 5, 2002.

Rehearing Denied April 3, 2003.

Ken Salazar, Attorney General, Rebecca A. Adams, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Nancy J. Lichtenstein, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge TAUBMAN.

Defendant, Kevin R. Willcoxon, appeals the judgment of conviction entered upon jury verdicts finding him guilty of two counts of second degree assault. He also appeals his sentence. We affirm the judgment and remand for reconsideration of the sentence.

This case arose out of an altercation between defendant and correctional officers at

the Colorado State Penitentiary. After defendant was moved from one cell to another, four correctional officers brought his personal property to his new cell. Defendant was handcuffed and ordered to step outside the cell door. Although cooperative at the outset, defendant refused to return to his cell when so ordered by the officers.

As the four correctional officers approached defendant, he kicked one officer in the chest and "head butted" another officer in the mouth. One correctional officer suffered a bruise on his chest, and his doctor recommended he take an over-the-counter pain medication. Another correctional officer suffered a "split lip" for which he did not seek medical attention.

The jury convicted defendant of two counts of second degree assault. The trial court sentenced defendant to six years in the Department of Corrections for each count, to be served concurrently, plus a mandatory period of parole. This sentence was ordered to be served consecutively to any sentence or sentences defendant was serving or had yet to serve.

## I. Juror Notebooks

Defendant contends it was structural error to send the jurors home overnight with their notebooks to study their contents, including a partial set of jury instructions and a prosecution exhibit. We disagree.

■ The jury reform program initiated in 1999 allows jurors to take notes and use juror notebooks during both civil and criminal trials. R.L. Kourlis & J. Leopold, *Colorado Jury Reform*, 20 Colo. Law. 21 (Feb. 2000). Crim. P. 16(IV)(f) authorizes the use of juror notebooks to "aid jurors in the performance of their duties."

## A. Structural Error

■ There are two categories of constitutional error: structural error and trial error. A structural error is a "structural defect affecting the framework within which the trial proceeds," whereas trial errors occur in the trial process itself. *Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302 (1991). The remedy

for a structural error is automatic reversal. *Blecha v. People*, 962 P.2d 931, 942 (Colo. 1998). Plain error and harmless error analysis do not apply to structural errors, *Griego v. People*, 19 P.3d 1, 8 (Colo.2001), because such errors undermine the reliability of the basic function of a criminal trial, the determination of guilt or innocence. *People v. Price*, 969 P.2d 766, 769 (Colo.App.1998).

■ Structural errors include complete deprivation of the right to counsel, trial before a biased judge, improper exclusion of a member of the defendant's ethnic group from a grand jury, and violation of the right to a public trial. *People v. Price, supra.* "Such errors affect the entire conduct of the trial from beginning to end, or deny the defendant a basic protection, the precise effects of which are immeasurable." *Bogdanov v. People*, 941 P.2d 247, 253 (Colo.1997) (citations omitted), *disapproved on other grounds by Griego v. People, supra; see also People v. Collie*, 995 P.2d 765 (Colo.App.1999).

In contrast, other errors have been held not to constitute structural error. For example, in *Griego v. People, supra*, the supreme court followed *Neder v. United States*, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999), and held that the misdescription to the jury of an element of the offense was not reviewable under structural error analysis. The omission of a sentence mitigating circumstance from a jury instruction also has been held not to constitute structural error. *People v. Lee*, 30 P.3d 686 (Colo.App.2000); *see also People v. Collie, supra*, (application of a disqualified judge's pretrial rulings to the remainder of the proceeding, without independent review by the replacement judge, did not constitute structural error).

■ Here, the record on appeal does not include a juror notebook or the specific partial jury instructions sent home with the jury. The trial court described those instructions as an "initial burst" of instructions, explaining that "they're the bulk of the very same instructions that I'll give to [the jury as] final instructions in the case." The trial court also told the jurors that the court was not "direct[in] [their] attention to any portion of the notebook to the exclusion of any other." The

final instructions given the jury are contained in the record, and defendant does not challenge their propriety on appeal.

While the model civil jury instructions include an instruction that juror notebooks may only be taken to and from the courtroom and jury room and nowhere else, CJI–Civ. 4th 1:7, 1:7A (1998), the model criminal jury instructions, CJI–Crim. (1983), do not contain a similar restriction.

We conclude the trial court erred by allowing the jurors to take the juror notebooks home because this procedure is not expressly authorized by Crim. P. 16(IV)(f). However, we also conclude this action did not constitute structural error because it was not a fundamentally serious error that would "pervasively prejudice the entire course of the proceedings." *People v. Lee, supra,* 30 P.3d at 688.

Here, any harm to defendant by jurors taking juror notebooks home is measurable. Several factors can be reviewed to determine what harm, if any, possible juror irregularities caused a defendant: (1) whether the jurors were admonished not to show the juror notebooks to anyone, or discuss the case or the contents of the juror notebooks with anyone; (2) whether there is evidence that jurors did anything improper as a result of taking juror notebooks home, such as using extrinsic information to assist in deliberations; and (3) whether taking the juror notebooks home prompted jurors to discuss the case prior to jury deliberations. *See Bogdanov v. People, supra.*

Here, for example, the trial court could assess whether defendant was prejudiced by one juror's use of a dictionary after taking the juror notebooks home. This is an issue we discuss below.

Accordingly, we conclude there was no structural error.

Because of this conclusion, we do not address the People's contention that any error here was invited.

## B. Use of Dictionary

In a related argument, defendant contends that one juror's use of a dictionary consti-

tutes grounds for reversal. Again, we disagree.

■ It is improper for jurors to consult a dictionary to assist in their understanding of legal terminology. *Niemand v. District Court,* 684 P.2d 931 (Colo.1984).

In *Niemand,* a juror used *Black's Law Dictionary* at home following a day of deliberation to look up the meaning of at least eleven words and phrases, such as "premeditation," "deliberation," "depravity of heart," "first degree murder," "second degree murder," and "manslaughter," because she was unsure how to vote. After consulting the dictionary, the juror became "totally convinced" that she would vote to convict the defendant of second degree murder. The juror wrote down the definitions and took them with her to the jury room, where she offered to share the information with the other jurors. The juror put her notes away after a negative reaction from some of her fellow jurors, and the jury deliberations continued. The jury ultimately found the defendant guilty of second degree murder. On appeal, the supreme court concluded the juror's consultation of a legal dictionary prejudiced the defendant.

■ In contrast, here, after the jurors had brought the jury notebooks home, and while the trial court was instructing the jury, the court questioned whether the present perfect tense of "plead" should be "has plead[ed]" or "has pled." A juror volunteered that she had looked up the word "plead" in a dictionary at home, and the dictionary supported either spelling. Defense counsel did not object, and there was no followup on the juror's comment. The trial court continued instructing the jury.

Unlike in *Niemand, supra,* there is no evidence here that the juror used dictionary definitions to aid her in determining defendant's guilt or that she improperly influenced jury deliberations. Instead, the juror only used the dictionary to check the spelling of a word. Therefore, we conclude that *Niemand, supra,* is distinguishable.

Accordingly, under these circumstances, we conclude the juror's consultation of a dictionary does not require reversal.

## II. Character Evidence

Defendant next contends that reversible error was injected into his second degree assault trial when a correctional officer testified that inmates at the Colorado State Penitentiary are prone to violence. We are not persuaded.

■ When no contemporaneous objection is made to an asserted error, appellate review is limited to determining whether there is plain error. Plain error "casts serious doubt upon the basic fairness of the trial itself." *Wilson v. People,* 743 P.2d 415, 419–20 (Colo.1987).

As relevant here, CRE 404(a) provides that "[e]vidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion."

■ Here, the trial court requested the prosecutor to have the witness explain why there was a video recording of the altercation. In response, the correctional officer testified that:

> the state penitentiary is probably one of the few facilities in the state operation that is not only a maximum security but an administrative segregation environment, and because the inmates that are incarcerated there are the most prone to violence and/or escape, it's in the best interest of all concerned to have a video surveillance put on the dayhall to monitor what goes on in the dayhall since it's limited movement by the inmates.

Defense counsel did not object to the testimony.

The correctional officer's statement was isolated, did not specifically refer to defendant, and was not made in response to a question concerning defendant. Accordingly, we conclude that there was no plain error.

## III. Sentence

■ Finally, defendant contends the general sentence aggravator set forth in the former § 18–1–105(9)(a)(V), now codified at § 18–1.3–401(8)(a)(IV) C.R.S.2002, which mandates-sentencing in the aggravated range if the defendant commits a felony while confined in a correctional institution, does not apply to the crime of second degree assault as defined in § 18–3–203(1)(f), C.R.S. 2002. We agree.

On the one hand, defendant argues that the General Assembly did not intend to punish this offense under § 18–1.3–401(8)(a)(IV) because the second degree assault statute provides its own specific sentence enhancement and because this specific category of second degree assault is not listed as an offense subject to an aggravated sentencing range under either § 18–1.3–406, C.R.S.2002 (formerly § 16–11–309), or § 18–1.3–401(8)(a)(IV). On the other hand, the prosecution argues that the plain language of both the general sentence aggravator and the second degree assault enhancement applies to defendant. We are not persuaded by the People's argument.

Where a question of law is raised on appeal, the standard of review is de novo. *People v. Melillo,* 25 P.3d 769, 777 (Colo.2001).

The second degree assault statute provides in pertinent part that a person commits second degree assault if:

> While lawfully confined or in custody, he or she knowingly and violently applies physical force against the person of a peace officer ... engaged in the performance of his or her duties.... A sentence imposed pursuant to this paragraph (f) shall be mandatory (and the court shall not grant probation or a suspended sentence, in whole or in part) and shall run consecutively with any sentences being served by the offender....

Section 18–3–203(1)(f).

The general sentence aggravator statute provides in pertinent part that:

> The presence of any one or more of the following extraordinary aggravating circumstances shall require the court; if it sentences the defendant to incarceration, to sentence the defendant to a term of at least the midpoint in the presumptive range but not more than twice the maximum term authorized in the presumptive range for the punishment of a felony:
>
> ...

(IV) The defendant was under confinement, in prison, or in any correctional institution as a convicted felon ... at the time of the commission of a felony....

Section 18–1.3–401(8)(a).

The presumptive sentencing range for defendant's offense, a class four felony, is two to six years. Section 18–1.3–401(1)(a)(V)(A), C.R.S.2002. However, with the application of § 18–1.3–401(8)(a)(IV), the aggravated sentencing range is four to twelve years.

While the prosecution's argument that both sentencing statutes apply might be reasonable, we are not writing on a clean slate. We conclude that *People v. Andrews*, 871 P.2d 1199, 1203 (Colo.1994), governs our analysis here. There, the supreme court held that the sentence aggravator did not apply to escape or attempted escape because the statutes defining those crimes provided a specific sentence enhancement, that the imposed sentence run consecutive to the sentence for the underlying felony.

Here, as in *Andrews*, the second degree assault statute provides the same consecutive sentence enhancement, and the general aggravator statute would appear to apply to defendant. Given these similarities, we find *People v. Andrews, supra,* to be dispositive.

In addition, the General Assembly twice amended the general aggravator statute after the *Andrews* decision. Colo. Sess. Laws 1996, ch. 155, § 18–1–105(9)(a)(III) at 736; Colo. Sess. Laws 1997, ch. 264, § 18–1–105(9)(a)(X) at 1546. And the entire statute was repealed and reenacted in 2002 without substantive change to this general aggravator provision. Because the legislature is presumed to be aware of judicial decisions when it enacts or amends legislation, *Vaughan v. McMinn*, 945 P.2d 404, 409 (Colo.1997), its failure otherwise to amend the statute indicates approval of the *Andrews* court's interpretation. *See People v. Swain*, 959 P.2d 426, 430–31 (Colo.1998).

Accordingly, we hold that the general sentence aggravator in § 18–1.3–401(8)(a)(IV) does not apply to the crime of second degree assault as defined in § 18–3–203(1)(f).

■■■ Where a trial court misapprehends the scope of its discretion in imposing sentence, a remand is necessary for reconsideration of the sentence within the appropriate sentencing range. *See Adair v. People*, 651 P.2d 389, 392 (Colo.1982).

Defendant's sentence of six years imprisonment for each count falls within both the presumptive sentencing range and the aggravated sentencing range. At sentencing, the People requested the court to impose the aggravated range sentence recommended in the presentence report of eight to twelve years imprisonment. However, the record is unclear as to whether the trial court employed the aggravated range in imposing the sentence.

Accordingly, on remand, the trial court must reconsider the sentence. If the sentence was imposed using the aggravated range, it must be vacated and a new sentence imposed in the presumptive range. In that event, the trial court is not precluded from again imposing six-year terms, but the new sentence must be accompanied by appropriate findings. *See People v. Malone*, 923 P.2d 163 (Colo.App.1995).

However, if the sentence was imposed using the presumptive range, it stands affirmed. In that event, the trial court should expressly indicate that it used the presumptive range and make appropriate findings.

The judgment is affirmed and the case is remanded for further consideration of the sentence in accordance with this opinion.

Judge ROTHENBERG and Judge WEBB concur.