**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Ronald TAYLOR, Defendant–Appellant.**

No. 03CA0406.

Colorado Court of Appeals, Div. I.

Sept. 22, 2005.

Certiorari Denied April 3, 2006.*

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2005.

* Justice EID does not participate.

1160 ■ ■■■■■■■■■■■■■■■■■■■■■■

John W. Suthers, Attorney General, Matthew S. Holman, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Jud Lohnes, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

HAWTHORNE, J.

Defendant, Ronald Taylor, appeals from the judgment of conviction entered on a jury verdict finding him guilty of one count of possession with intent to distribute an imitation controlled substance. We affirm.

An undercover officer with the Denver Police Department observed an apparent drug deal involving defendant and three other individuals. In particular, the officer observed the buyer signal a group of three people, including defendant. Defendant and his companions crossed the street and formed a semicircle around the buyer. The officer saw defendant remove a baggie from his pocket, take something from the baggie, and hand it to the buyer. Another individual also made a hand-to-hand transaction with the buyer. The buyer then put the object he had received into his mouth. As these events occurred, the officer transmitted a description of the events to other nearby officers. The nearby officers closed in on the area and arrested the buyer, defendant, and the other individual involved in the transaction.

Two police officers contacted the buyer near the site of the transaction. As they approached, he spit out a package containing a rock of crack cocaine. The officers retrieved the package and arrested the buyer. Shortly after he was contacted, the buyer identified defendant as one of the individuals from whom he had purchased the crack cocaine.

Police officers apprehended defendant in a nearby liquor store. One of the officers conducted a pat-down search of defendant and felt something consistent with rocks of crack cocaine. The officer gave defendant a choice between retrieving the item at the scene and going to the police station for a strip search. Defendant chose to give the officer the object, which upon further testing turned out to be crushed acetaminophen.

Defendant was charged with distribution of a controlled substance, possession of a controlled substance, and possession with intent to sell an imitation controlled substance. The jury acquitted him of distribution and possession of a controlled substance, but convicted him of possession with intent to sell an imitation controlled substance. This appeal ensued.

I.

■ Defendant contends that the prosecution failed to produce evidence sufficient to support his conviction for possession of an imitation controlled substance. We disagree.

A.

Defendant contends that the evidence adduced at trial was insufficient because it failed to show that he knowingly purported the substance in his possession to be a controlled substance. We disagree.

To resolve this issue, we must construe § 18–18–422, C.R.S.2005, to determine what mental state applies to the offense. In construing a statute, our primary goal is to discern and give effect to the intent of the General Assembly. In so doing, we look to the language of the statute and give the words and phrases used their common meanings. We are to give effect to every word and are not to adopt constructions that render any terms superfluous. *People v. Madden*, 111 P.3d 452, 457–58 (Colo.2005); *People v. Duncan*, 109 P.3d 1044, 1046 (Colo. App.2004).

Section 18–18–422(1)(a), C.R.S.2005, provides in pertinent part that "it is unlawful for any person to manufacture, distribute, or possess with intent to distribute an imitation

controlled substance." An "imitation controlled substance" is defined as

> a substance that is not the controlled substance that it is purported to be but which, by appearance, including color, shape, size, and markings, by representations made, and by consideration of all relevant factors as set forth in section 18–18–421, would lead a reasonable person to believe that the substance is the controlled substance that it is purported to be.

Section 18–18–420(3), C.R.S.2005.

Although the statute is silent as to the requisite mens rea for the offense of possession with intent to distribute an imitation controlled substance, the Colorado Supreme Court construed an earlier version of the statute to imply a mental state of "knowingly", and neither party argues that subsequent amendments require a different construction. *See People v. Moore,* 674 P.2d 354, 358 (Colo.1984).

A person acts "knowingly" with respect to conduct or a circumstance "when he is aware that his conduct is of such nature or that such circumstance exists." A person acts "knowingly" with respect to a result of his conduct when "he is aware that his conduct is practically certain to cause the result." Section 18–1–501(6), C.R.S.2005.

■ A statute may require proof of a defendant's mental state concerning the conduct, the circumstances, or the result, but not necessarily all three. *Copeland v. People,* 2 P.3d 1283, 1285–86 (Colo.2000); *People v. Baca,* 852 P.2d 1302, 1305 (Colo.App.1992).

Defendant contends that to support any conviction under § 18–18–422, and to meet the definition of an imitation controlled substance, the People must prove that the defendant knowingly purported the substance to be a controlled substance. In support of his argument, defendant relies on *People v. Moore, supra,* and *People v. Pharr,* 696 P.2d 235 (Colo.1984). As noted above, the supreme court held in *Moore* that the imitation controlled substance statute contained an implied mens rea of "knowingly".

In *Pharr,* the supreme court held:

> To sustain a conviction under the statute, the defendant must knowingly represent that a substance is a controlled substance, either knowing that the substance is not controlled or mistakenly believing that it is controlled. The mental element of the statute relates to the representation underlying the nature and not the actual sale of the substance. The defendant's actual knowledge of the nature of the substance sold is irrelevant if he knowingly represents that it is a controlled substance and thereafter sells an uncontrolled substance.

*People v. Pharr, supra,* 696 P.2d at 237.

■ However, the statute at issue in *Moore* and *Pharr* provided in pertinent part that an imitation controlled substance "means any substance which is not a controlled substance, but which is *expressly or impliedly represented* to be a controlled substance and which is of such nature, packaging, or appearance as to lead a reasonable person to believe that the substance is a controlled substance." Colo. Sess. Laws 1981, ch. 221, § 18–5–306(1)(b) at 995 (emphasis added). In 1983, the General Assembly amended the statute to eliminate any reference to express or implied representations concerning the nature of the imitation controlled substance. *See* Colo. Sess. Laws 1983, ch. 201, § 18–5–602(1)(b) at 702. When the General Assembly amends a statute, we must presume that it intends to change the law. *People v. Covington,* 19 P.3d 15, 21 (Colo.2001).

As amended, and as quoted above, the current statute defines an "imitation controlled substance" as "a substance that is not the controlled substance that it is purported to be but which [based on several factors] would lead a reasonable person to believe that the substance is the controlled substance that it is purported to be." Section 18–18–420(3).

Defendant urges us to adopt a reading of § 18–18–420(3) that treats the term "purported" as conduct on the part of the defendant. Under this reading, to obtain a conviction, the People must show that the defendant "knowingly purported" the substance to be a controlled substance. Were we to agree with defendant's argument, we would read the term "purported" to mean

"expressly or impliedly represented." This reading ignores the effect of the 1983 amendments, which removed the terms "expressly or impliedly represented" from the statute. In addition, such a construction would render meaningless the General Assembly's inclusion of representations as merely one factor among many that would lead a reasonable person to believe that the substance is a controlled substance. *See* § 18–18–420(3).

Instead, we conclude that the General Assembly intended the term "purported" to refer to the circumstances surrounding the defendant's conduct. Under this reading, it is sufficient if the defendant is aware that based on the substance's "appearance, including color, shape, size, and markings, ... representations made, and ... consideration of all relevant factors as set forth in section 18–18–421," a reasonable person would believe that it is a controlled substance.

This interpretation conforms to the common dictionary definition of the term "purport." One dictionary defines the word to mean "to convey, imply, or profess outwardly (as meaning, intention, or true character)" or to "have the often specious appearance of being, intending, claiming (something implied or inferred)." *Webster's Third New International Dictionary* 1847 (1986). Another defines the word "purport" to mean "to profess or claim, esp. falsely; to seem to be." *Black's Law Dictionary* 1250 (8th ed.2004).

This interpretation is buttressed by § 18–18–421, C.R.S.2004, which provides:

(1) In determining whether a substance is an imitation controlled substance, the trier of fact may consider, in addition to all other relevant factors, the following:

(a) Statements by an owner or by anyone in control of the substance concerning the nature of the substance or its use or effect;

(b) Statements made to the recipient that the substance may be resold for inordinate profit which is more than the normal markup charged by legal retailers of similar pharmaceutical products;

(c) Whether the substance is packaged in a manner normally used for illicit controlled substances;

(d) Evasive tactics or actions utilized by the owner or person in control of the substance to avoid detection by law enforcement authorities;

(e) The proximity of the imitation controlled substance to any controlled substances when conduct purported to be illegal under this article is observed.

Had the General Assembly intended the definition of an "imitation controlled substance" to include the requirement of an express or implied representation on a defendant's part, it would not have permitted the trier of fact to consider the packaging of the substance, the actions taken to avoid detection by law enforcement authorities, or the substance's proximity to any controlled substances, because these factors do not relate to any representation made by the defendant.

However, these factors are relevant, because the fact finder may infer a defendant's mental state from his or her conduct and the circumstances of the case. *Miller v. Dist. Court*, 641 P.2d 966, 968 (Colo.1982); *People v. Yascavage*, 80 P.3d 899, 902 (Colo.App. 2003), *aff'd*, 101 P.3d 1090 (Colo.2004). Thus, where a defendant makes statements about the nature of a substance or its inordinate resale value, packages it like an illicit substance, takes evasive actions to conceal the substance from law enforcement, or stores it with controlled substances, a fact finder may infer that the defendant is aware that the substance appears to be a controlled substance.

Here, the acetaminophen was formed and packaged in a manner normally used for illicit controlled substances, defendant was observed using evasive tactics to conceal it in his pants, and defendant was observed engaging in a transaction similar to that ordinarily used for "street level" narcotics sales.

We therefore conclude that there is no requirement that a defendant knowingly purport that a substance is a controlled substance. Hence, we reject defendant's contention that the evidence adduced at his trial was insufficient in that respect.

## B.

■ We now turn to the question of whether there was sufficient evidence from which a reasonable person could conclude beyond a reasonable doubt that defendant was guilty of possession with intent to distribute an imitation controlled substance. We conclude there was sufficient evidence.

■ Where the sufficiency of the evidence is challenged on appeal, we must determine whether the evidence, viewed as a whole and in the light most favorable to the prosecution, is sufficient to support a conclusion by a reasonable person that the defendant is guilty of the crime charged beyond a reasonable doubt. In so doing, we must draw all reasonable inferences in favor of the prosecution. *Kogan v. People*, 756 P.2d 945, 950 (Colo.1988), *abrogated on other grounds by Erickson v. People*, 951 P.2d 919, 923 (Colo. 1998); *People v. Prendergast*, 87 P.3d 175, 185 (Colo.App.2003).

Here, the jury was instructed that to find defendant guilty of possession with intent to distribute an imitation controlled substance, it must find that (1) defendant (2) at or about the place and time charged (3) knowingly (4) possessed with intent to distribute any imitation controlled substance.

The jury heard testimony that defendant approached the buyer and handed him something, which the buyer placed in his mouth. Defendant received something in return from the buyer and then crossed the street and went into a nearby liquor store.

Shortly thereafter, an officer entered the liquor store and saw defendant make a gesture with his hands that looked "like he was either removing something from his pants, or placing something into his pants." In addition, the jury heard testimony from police officers that they recovered from defendant's pants a plastic baggie containing a broken tablet of acetaminophen that resembled crack cocaine and a twenty dollar bill.

An expert witness testified about how a typical street level narcotics sale occurs. He indicated that a potential buyer will make eye contact with potential sellers and nod at them or yell "twenty" or "two-oh." There will be a quick transaction, and the parties will split up. The expert also testified that crack is often stored in some type of plastic wrapper.

From this evidence, a juror could have reasonably concluded that defendant knowingly possessed the broken tablet of acetaminophen with the intent to sell it as if it were a controlled substance. Viewing this evidence in the light most favorable to the People, we conclude that it was sufficient to support a reasonable juror's conclusion beyond a reasonable doubt that defendant was guilty of possession with intent to sell an imitation controlled substance.

## II.

■ Defendant also contends that the trial court erred by denying his motion to suppress the evidence against him because the officer making the initial stop lacked a reasonable suspicion to believe that he was involved in a crime. We disagree.

■■ A trial court's ruling on a motion to suppress raises mixed questions of law and fact. When reviewing mixed questions of law and fact, we give deference to the trial court's factual findings, but we subject its conclusions of law to de novo review. *People v. Garcia*, 11 P.3d 449, 453 (Colo.2000); *People v. Milligan*, 77 P.3d 771, 774 (Colo.App. 2003).

■ The United States and Colorado Constitutions provide that persons shall be free from unreasonable searches and seizures. U.S. Const. amend. IV; Colo. Const. art. II, § 7; *People v. Garcia, supra; People v. Milligan, supra*. A person is seized within the meaning of the Fourth Amendment if a reasonable person under the circumstances would not feel free to leave or disregard an officer's request for information. *Outlaw v. People*, 17 P.3d 150, 155 (Colo.2001); *People v. Beckstrom*, 843 P.2d 34, 37 (Colo.App. 1992).

■ Colorado courts have recognized three different kinds of police-citizen encounters, each requiring a different level of justification. All police-citizen encounters are either arrests, investigatory stops, or consensual encounters. Only arrests and in-

vestigatory stops are seizures implicating the Fourth Amendment. *Outlaw v. People,* *supra,* 17 P.3d at 154; *People v. Mack,* 33 P.3d 1211, 1214–15 (Colo.App.2001).

■ A lawful investigatory stop permits police officers who have reasonable suspicion that an individual has committed, or is about to commit, a crime, to subject that individual to a limited detention, so long as the detention is reasonable in purpose, scope and character. *People v. Canton,* 951 P.2d 907, 909 (Colo.1998); *People v. Mack, supra,* 33 P.3d at 1215.

■ When we review the reasonableness of an arrest or investigatory stop, we look to the totality of the circumstances. *People v. Canton, supra,* 951 P.2d at 910; *People v. Dixon,* 21 P.3d 440, 442–43 (Colo.App.2000). We consider all the facts and circumstances known to the officers, as well as all rational inferences that could be drawn from those facts at the time of the intrusion. *People v. Padgett,* 932 P.2d 810, 815 (Colo.1997); *People v. Mack, supra,* 33 P.3d at 1215.

■ When considering the totality of the circumstances, a trial court may consider the information possessed by the police as a whole under the "fellow officer" rule. The "fellow officer" rule provides that an officer who does not personally possess sufficient information to constitute probable cause or a reasonable articulable suspicion may nevertheless make a warrantless arrest or investigatory stop if "(1) he acts upon the direction or as a result of a communication from a fellow officer, and (2) the police, as a whole, possess sufficient information to constitute probable cause" or reasonable suspicion. *People v. Washington,* 865 P.2d 145, 147 n. 2 (Colo.1994); *People v. Thompson,* 793 P.2d 1173, 1175 (Colo.1990); *see also People v. Pigford,* 17 P.3d 172, 176 (Colo.App.2000) (applying fellow officer rule to investigatory stop).

Here, at the hearing on defendant's motion to suppress, the trial court heard testimony from two police officers. The first officer testified that on the night in question, she was working undercover and observed the buyer signal to defendant and the two conduct a hand-to-hand transfer. She testified that while the transaction was occurring, she was using her radio to transmit her observations to the other police officers in the area. Among the information conveyed was a physical description of defendant.

A second officer testified that he was one of the uniformed officers involved in a narcotics sting with the undercover officer. He testified that he was a member of one of the arrest teams assigned to the area. Upon receiving information from the undercover officer, he and his partner contacted the buyer, while other officers went to contact defendant and the other individuals.

Although no officer testified that the officers who contacted defendant were members of an arrest team, there was testimony that the undercover officer was transmitting information to other officers in the area and that the officers who arrested defendant were one of the arrest teams. This testimony gives rise to a reasonable inference that the officers who contacted defendant were also members of an arrest team and were acting as a result of the undercover officer's description of the events she observed and the individuals involved. Thus, although the officer who contacted defendant may not have had personal knowledge of facts sufficient to give rise to a reasonable suspicion that defendant had committed, was committing, or was about to commit a crime, the evidence was sufficient to support a conclusion that he was acting as a result of the undercover officer's communication. The evidence also clearly establishes that the police had a sufficient reasonable suspicion to support an investigatory stop.

We therefore conclude that the trial court did not err by denying defendant's motion to suppress.

### III.

■ We reject defendant's contention that the trial court erred when it admitted evidence of his prior bad acts involving possession of crack cocaine.

■ Evidence of other crimes, wrongs, or acts is generally inadmissible to prove a defendant's character or show his or her propensity for such conduct. However, such

evidence may be admissible under CRE 404(b) for other purposes, such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." The listed uses for which evidence of criminal acts may be admissible are "neither mutually exclusive nor collectively exhaustive." *People v. Rath,* 44 P.3d 1033, 1038 (Colo.2002) (quoting 1 Charles T. McCormick, *McCormick on Evidence* § 190, at 659 (John W. Strong ed., 5th ed.1999)).

■ Read together, CRE 403 and 404(b) allow admission of evidence of prior acts when (1) the evidence relates to a material fact; (2) the evidence has logical relevance in that it increases the probability that the material fact is true; (3) the logical relevance of the evidence is independent of an intermediate inference that the defendant has a bad character, which would be employed to support a further inference that the defendant acted in conformity with his or her bad character; and (4) the probative value of the evidence is not substantially outweighed by the prejudicial effect of the evidence. *People v. Spoto,* 795 P.2d 1314 (Colo.1990).

■ Under CRE 403, relevant evidence is admissible unless its probative value is substantially outweighed by the danger of unfair prejudice. Unfair prejudice, within the meaning of CRE 403, is an "undue tendency on the part of admissible evidence to suggest a decision made on an improper basis." *People v. Rath, supra,* 44 P.3d at 1043 (quoting *People v. Gibbens,* 905 P.2d 604, 608 (Colo.1995)). The balance required by CRE 403 favors admission, and, therefore, a reviewing court must afford the evidence the maximum probative value attributable by a reasonable fact finder and the minimum unfair prejudice reasonably to be expected. *People v. Fry,* 74 P.3d 360, 370 (Colo.App. 2002), *aff'd,* 92 P.3d 970 (Colo.2004).

However, there is an inherent danger that even properly admitted evidence of other crimes will influence a jury to convict a defendant on an improper basis. This danger "always serves as a strong counterweight to any probative value" the evidence might have. *People v. Rath, supra,* 44 P.3d at 1039.

■ Trial courts are accorded considerable discretion in deciding questions concerning admissibility of evidence, and a trial court's decision to admit other acts evidence will not be reversed absent a showing that the ruling was manifestly arbitrary, unreasonable, or unfair. *People v. Rath, supra.* Thus, absent an abuse of discretion, a trial court's evidentiary ruling on the probative value and prejudicial effect of the evidence will not be overturned on appeal. *People v. Dist. Court,* 869 P.2d 1281 (Colo.1994).

Here, evidence that defendant had previously possessed crack cocaine was relevant to the issue of whether he knowingly possessed imitation crack cocaine in this case. The fact that defendant had previously possessed crack cocaine made it more probable that he was aware that the substance he possessed appeared to be crack cocaine. Further, the evidence was relevant independent of the intermediate inference that defendant was a person of bad character, because his prior conduct directly showed his familiarity with crack cocaine. Finally, giving the evidence its maximum probative value and minimum prejudicial effect, we conclude that the trial court did not abuse its discretion when it admitted this evidence of his prior bad acts.

## IV.

■ Defendant also contends that his conviction must be reversed because the trial court erred in denying his motion for recusal. Defendant alleged that the judge was biased and prejudiced because he asked defendant a question during a pretrial hearing concerning his past drug use and did not allow defendant to present any argument before ruling on the admissibility of the evidence. We conclude that the motion was legally inadequate.

Section 16–6–201(3), C.R.S.2005, provides: "A motion for change of judge on any ground must be verified and supported by the affidavits of at least two credible persons not related to the defendant, stating facts showing the existence of grounds for disqualification."

■ We review de novo a trial court ruling on a motion for recusal under § 16–6–201, C.R.S.2005. *Smith v. Dist. Court,* 629 P.2d 1055, 1056 (Colo.1981).

Here, contrary to the requirements of § 16–6–201(3), defendant's motion was nei-

ther verified nor supported by affidavit. Defendant's motion noted, however, that the test of legal sufficiency of a motion to disqualify "is whether the motion and *required affidavits* state facts" suggesting the judge is biased or prejudiced against a party (emphasis added). In the absence of the required affidavits, we are unable to determine whether defendant has alleged facts that, when taken as true, would warrant a finding that the trial judge had a bias or prejudice which would prevent him from dealing fairly with defendant. We therefore conclude that the trial court properly denied defendant's motion for recusal.

The judgment is affirmed.

Judge MARQUEZ and Judge GRAHAM concur.