**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Andrew T. PLANCARTE, Defendant–Appellant.**

No. 06CA2525.

Colorado Court of Appeals, Div. IV.

Sept. 3, 2009.

Rehearing Denied Jan. 28, 2010.

John W. Suthers, Attorney General, Katherine A. Aidala, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Andrew T. Plancarte, Pro Se.

Opinion by Judge CARPARELLI.

Defendant, Andrew T. Plancarte, appeals the judgment of conviction entered upon a jury verdict finding him guilty of first degree burglary, second degree kidnapping, and two counts of third degree assault. He also appeals the sentence imposed. We affirm.

## I. Background

On the evening of March 25, 2004, two separate attacks on female students occurred within thirty minutes of each other near the University of Denver campus. At approximately 7:45 p.m., B.T. was walking home from campus when a man jogged past her, turned around, looked at her, and continued jogging. B.T. entered her residence a few houses away through the back door, and a short time later, a man entered her home through that door and punched her. B.T. recognized him as the same man who had jogged past her. The man pulled B.T. out the back door, threw her to the ground, repeatedly punched her, and then fled. At approximately 8:00 p.m., M.S. was also walking home from campus. M.S. turned around after hearing the sound of someone coming up behind her. A jogger grabbed her waist, put a hand over her mouth, and punched her in the head and in her side. They fell to the ground and the man tried to strangle her. M.S. was able to scream, and the man ran off.

Shortly after the attacks, B.T. and M.S. each gave a statement to the police and made a composite sketch of her attacker using a computer program at the police station. Each victim's description of her attacker, and each composite, appeared to pertain to the same man. The police released composites to the media and received numerous calls and tips regarding potential suspects. An anonymous caller advised police that the composite matched defendant's description.

Approximately one week after the attacks, B.T. and M.S. each looked through an array that consisted of twenty color photographs, and each identified defendant as her attacker.

Based on the above evidence, defendant was arrested on May 26, 2004, and charged with one count of first degree burglary, two counts of second degree kidnapping, and two counts of third degree assault. Prior to trial, defense counsel filed a motion to suppress evidence of the out-of-court identifications of defendant by B.T. and M.S. At a hearing on the motion to suppress, the trial court heard testimony from B.T. and M.S., viewed video CDs of the identification process, and viewed the twenty photos. It then denied defendant's motion, finding that the photographic array and identification procedure were not suggestive.

At trial, defendant presented an alibi defense, and several witnesses testified to his whereabouts on the night of the attacks. A jury found defendant guilty of first degree burglary, one count of second degree kidnapping, and two counts of third degree assault. The trial court sentenced him to concurrent and consecutive sentences that totaled fifteen years in the Department of Corrections, followed by 720 days in the Denver County Jail.

## II. Photographic Lineup

Defendant contends that the trial court erred when it denied his motion to suppress all in-court and out-of-court identifications of him by the victims because the photographic lineup was impermissibly suggestive and inherently unreliable. We disagree.

When reviewing a trial court's denial of a motion to suppress, we generally defer to the trial court's factual findings, but review its legal conclusions de novo. *People v. Arias*, 159 P.3d 134, 137 (Colo.2007); *People v. Taylor*, 131 P.3d 1158, 1164 (Colo.App.2005).

■ Due process of law protects the accused against the introduction of evidence tainted by unreliable pretrial identifications obtained through unnecessarily suggestive procedures. *Moore v. Illinois*, 434 U.S. 220, 227, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977). "A defendant is denied due process when an in-court identification is based upon an out-of-court identification which is so suggestive as to render the in-court identification unreliable." *People v. Borghesi*, 66 P.3d 93, 103 (Colo.2003).

■ In *Bernal v. People*, 44 P.3d 184, 191 (Colo.2002), the Colorado Supreme Court set out a two-part test to determine whether a photographic lineup violates a defendant's due process protections. First, the court must determine whether the defendant has proved that the photographic array was impermissibly suggestive; and second, after the defendant has met this burden, the state must show that the identification was never-

theless reliable under the totality of the circumstances. *Bernal,* 44 P.3d at 191. If a defendant fails to show that the photo lineup was impermissibly suggestive, no further inquiry is necessary. *Bernal,* 44 P.3d at 191.

## A. Impermissibly Suggestive

When determining whether a photo lineup was impermissibly suggestive, courts generally look at (1) the size of the photo array, (2) the officer's presentation of the photos, and (3) whether the defendant's picture so stood out from the other photographs as to suggest to an identifying witness that the defendant was more likely to be the culprit. *Bernal,* 44 P.3d at 191.

### 1. Size of the Array

The photographic array contained twenty photos, and the videos demonstrate that both witnesses identified defendant after viewing the photographs at their own pace. We find nothing suggestive about the size of the array or the officer's presentation of it to the victims.

### 2. Presentation of the Photos

The videos show the officer explaining the lineup form to both witnesses, which admonished them as follows:

> This group of photographs may or may not contain a picture of the person who committed the crime now being investigated.... Please keep in mind that hair styles, beards, and mustaches are easily changed. Also, photographs do not always depict the true complexion of a person—it may be lighter or darker than shown in the photograph. Also pay no attention to whether the photos are in color or black and white, or any other difference in the type or style of the photographs.

We conclude the manner of presentation was not impermissibly suggestive.

### 3. Whether Defendant's Photo Stood Out

Defendant argues that although there were twenty photos in the array, seventeen of them were inconsistent with the victims' descriptions because the photos portrayed men who were light-skinned Anglos, had facial hair, or wore glasses. He contends that, of the two or three photos of clean-shaven Hispanic men, only defendant was wearing a brightly colored orange shirt.

### 4. Law

"[I]t is not required that all of the photographs in the array be uniform with respect to one given characteristic." *Bernal,* 44 P.3d at 192. However, an array that includes a photo "that is unique in a manner directly related to an important identification factor may be held impermissibly suggestive." *Bernal,* 44 P.3d at 192. Thus, "[s]imply being of a different race or ethnic group from others placed in a lineup does not necessarily make the lineup impermissibly suggestive, especially where ... the other individuals had roughly the same characteristics and features of the accused." *Bernal,* 44 P.3d at 192 (quoting *Williams v. Weldon,* 826 F.2d 1018, 1021 (11th Cir.1987)). Nonetheless, "a photo array in which the individual characteristics of the accused, such as race, stand in stark contrast to the other photographs is impermissibly suggestive." *Bernal,* 44 P.3d at 192.

Because defendant raises concerns that some of the photos portray men with facial hair, we note that in *Bernal* the supreme court said "all that is required is that the 'photos are matched by race, approximate age, facial hair, and a number of other characteristics.'" *Bernal,* 44 P.3d at 191–92 (quoting *People v. Webster,* 987 P.2d 836, 839 (Colo.App.1998)). There, the court concluded that the photo array was impermissibly suggestive because the witnesses had described the perpetrator as "Hispanic," and, in an array of six photos, Bernal's photo was the only one of a man with a stereotypical Hispanic appearance. The court said "Bernal leap[ed] out as the one person who [was] different because of his ethnicity." *Bernal,* 44 P.3d at 193. In addition, the court noted that only Bernal's photo was taken against a clear white background while the others were all taken against neutral venetian blinds. *Bernal,* 44 P.3d at 193–94. For these reasons, the court concluded the array was impermissibly suggestive. Thus, the fa-

cial hair was not an issue, let alone a dispositive one.

In support of its reference to the requirements of race, age, facial hair, and other characteristics, the supreme court cited *Webster*, 987 P.2d at 839, and *People v. Borrego*, 668 P.2d 21, 23 (Colo.App.1983). As in *Bernal*, in neither of those cases were facial hair an issue, let alone a dispositive one. And we have found no Colorado case in which the court concluded that all photos in an array must have facial hair matching the victim's description of the perpetrator.

▇ Therefore, we conclude that disparity in facial hair is a factor to be considered when determining whether an array is impermissibly suggestive, but such disparity does not necessarily render an array impermissibly suggestive.

### B. Trial Court's Ruling

Here, the trial court concluded that the photographic lineup was not suggestive. The court reached its determination after it viewed the video CDs showing the identification process as well as the 20 photographs in the array itself, and heard defense counsel cross-examine B.T. and M.S. The court stated that the people in the array were similar in age and physical appearance, and the racial mix of the array was consistent with the witnesses' descriptions that the perpetrator was either a light-skinned Hispanic or dark-skinned Caucasian. It also determined that even if the photo lineup were unconstitutionally suggestive, there was no substantial likelihood of misidentification because the identifications were reliable.

### C. Conclusion

We also conclude that the photographic lineup was not unconstitutionally suggestive. On the night of the crime, B.T. described the attacker to police as a Hispanic or white male with a dark complexion, clean shaven with dark, slightly curly or wavy hair, and approximately 27 to 28 years of age. M.S. described the attacker as a Hispanic or white male with a dark complexion, in his thirties, approximately 5'10" with wide shoulders and a larger or protruding stomach, and clean shaven with dark hair.

Although as many as five of the men in the lineup were too light-skinned to fit the witnesses' descriptions of the perpetrator's race, the other fifteen photographs were of dark-complected men of possible Hispanic ethnicity. Unlike in *Bernal*, all photos show a similar blue background.

The majority of the men had no facial hair, and the presence of thin and short facial hair on the remaining men does not obscure their facial features, constitute a substantial difference, or tend to draw attention to defendant's photo. The facial hair on some photos in the array, which was presented to the victims just one week after the assaults, could easily be explained by the perpetrator's decision not to have shaved during that time. And in this regard, the lineup admonishment form presented before the victims viewed the array advised her to keep in mind that hair styles, beards, and mustaches are easily changed.

Defendant also argues that his photo stood out because he is wearing an orange shirt; however, the color was not bright and it did not render the array impermissibly suggestive. *See People v. Wilford*, 111 P.3d 512, 514 (Colo.App.2004).

For these reasons, like the trial court, we conclude that the array was not impermissibly suggestive so as to give rise to a substantial likelihood of misidentification.

### III. Sufficiency of the Evidence

Defendant contends that the evidence was insufficient to support a finding beyond a reasonable doubt that he was guilty of the crimes. We disagree.

### A. Law

An appellate court reviewing a challenge to the sufficiency of the evidence must determine whether any rational trier of fact might accept the evidence, taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding of guilt beyond a reasonable doubt. *People v. Williams*, 183 P.3d 577, 581 (Colo.App.2007). When applying this standard, we recognize

that (1) we generally do not assess the credibility of witnesses or resolve inconsistencies or contradictions in testimony; (2) we give the prosecution the benefit of every reasonable inference which can be drawn from the evidence; and (3) where reasonable minds could differ, the evidence is sufficient to sustain a conviction. *People v. Rincon,* 140 P.3d 976, 983 (Colo.App.2005).

▮ It is the jury's function to consider and determine what weight shall be given to the evidence, which includes resolving conflicts, inconsistencies, and disputes in the evidence. *People v. Rivas,* 197 Colo. 131, 136, 591 P.2d 83, 86 (1979). The jury, and not the appellate court, determines the credibility of the witnesses and only when the testimony is "so palpably incredible and so totally unbelievable" may an appellate court reject it as a matter of law. *People v. Dash,* 104 P.3d 286, 289 (Colo.App.2004) (citing *Kogan v. People,* 756 P.2d 945, 950 (Colo.1988)). Testimony is incredible as a matter of law only when a witness testifies to events that he or she could not possibly have seen or are not possible under the laws of nature. By contrast, testimony that is merely biased, conflicting, or inconsistent is not incredible as a matter of law. *People v. Minjarez,* 81 P.3d 348, 355 (Colo.2003).

In *People v. Rivas,* the defendant was convicted of second degree assault based on the testimony of two eyewitnesses. The supreme court rejected the defendant's argument that the witnesses' testimony was incredible as a matter of law. *Rivas,* 197 Colo. at 136, 591 P.2d at 86. It stated that both eyewitnesses, neither of whom knew the other prior to the assault, identified the defendant as the assailant, and the jury, by its guilty verdict, indicated that it believed the in-court identifications made by the eyewitnesses. *Rivas,* 197 Colo. at 136, 591 P.2d at 86.

### B. Analysis

▮ Viewing the evidence in its totality and in the light most favorable to the prosecution, we conclude that it was sufficient to sustain defendant's convictions beyond a reasonable doubt. On the night of the attacks, B.T. and M.S. each provided a description

and helped create a composite drawing of her assailant, and the two composites were very similar. Each victim identified defendant as her assailant in the out-of-court identification and in-court identification. B.T. testified that she was one hundred percent sure that defendant was the attacker, and stated that she observed her assailant face-to-face for about six seconds and was able to see him clearly in her well-lit home. M.S. testified that there was no question in her mind that defendant was the attacker. Although B.T. and M.S. described the perpetrator to police as several inches taller than defendant, this inconsistency does not render their testimony incredible as a matter of law. From this evidence, a juror could reasonably have concluded beyond a reasonable doubt that defendant was the perpetrator in the charged crimes. Furthermore, the jury's guilty verdict indicates that it believed the testimony of B.T. and M.S., and not the testimony of the defense witnesses.

Therefore, we conclude that the evidence was sufficient to support a finding that defendant was guilty of the crimes charged beyond a reasonable doubt.

### IV. Sentencing

Defendant contends the sentences imposed are excessive and too harsh, and the trial court abused its discretion when it did not consider the necessary factors and imposed consecutive rather than concurrent sentences. We disagree.

▮ A trial court, being more familiar with the defendant and the circumstances of the case, has broad discretion over sentencing decisions, which may not be overturned absent a clear abuse of discretion. *People v. Al-Yousif,* 49 P.3d 1165, 1169 (Colo.2002); *People v. McAfee,* 104 P.3d 226, 231 (Colo. App.2004). A sentencing court abuses its discretion when it does not consider the nature of the offense, the character and rehabilitative potential of the offender, the development of respect for the law, the deterrence of crime, and the protection of the public. *People v. Pauley,* 42 P.3d 57, 60 (Colo.App.2001). However, it is sufficient that the record contains evidence and a reasonable explanation

to support the sentence, and information that permits the conclusion that the court considered the essential factors. *People v. Linares–Guzman*, 195 P.3d 1130, 1137 (Colo. App.2008).

 When a defendant is convicted of multiple offenses, the sentencing court generally has the discretion to impose either concurrent or consecutive sentences. *Compare Juhl v. People*, 172 P.3d 896, 899 (Colo. 2007) (court has discretion to impose either concurrent or consecutive sentences unless multiple convictions are based on the same act or series of acts arising from the same criminal episode on the basis of identical evidence), *with People v. Muckle*, 107 P.3d 380, 383–84 (Colo.2005) (court retains its discretion to impose consecutive sentences where the evidence supports a reasonable inference that the convictions were not based on identical evidence).

Here, after defendant testified at the sentencing hearing, the trial court stated that defendant was guilty and had exploited his ex-wife and daughter by calling them to testify as alibi witnesses. It also determined that defendant continued to be a danger to the community. The court then imposed consecutive and concurrent sentences, the aggregate of which will require defendant to serve 15 years in the Department of Corrections, followed by 720 days in the Denver County Jail. It determined that the burglary of B.T.'s home was a separate criminal episode from the later kidnapping and assault of B.T., and ordered the 5–year sentence for the kidnapping to run consecutively with the 10–year sentence for the burglary conviction, and the 720–day sentence for the assault to run concurrently with the sentence for kidnapping. The court also determined that the assault on M.S. was separate from the attack on B.T., and imposed a 720–day jail sentence for the assault of M.S. to run consecutively with the sentences for crimes committed against B.T.

We perceive no abuse of discretion. After defendant testified at the sentencing hearing, the trial court considered his character when it emphasized that defendant had not acknowledged that he committed the offenses and that he called his daughter to testify falsely as an alibi witness. *See People v.* *Baker*, 178 P.3d, 1225, 1234 (Colo.App.2007) (sentencing court properly considered that the defendant testified at sentencing hearing, but did not admit that he committed the crime, and did not apologize or express remorse). The trial court also considered the public interest when it stated that defendant continued to be a ·danger to the community and was not fit for community supervision. The trial court stated that the assault on M.S. was an extraordinary risk crime and the 720–day sentence for this conviction would run consecutively to the other sentences.

The record contains sufficient evidence and the court's comments sufficiently demonstrate that the court considered the nature of the offenses and the character of the offender in determining the fairness of the sentences. In addition, the court provided a reasonable explanation to support the sentences. *See Linares–Guzman*, 195 P.3d at 1137 (a trial court is not required to engage in a point-by-point discussion of each and every one of the sentencing factors when it explains the sentence to be imposed).

 We requested and received supplemental briefing from the parties regarding whether, based on the conduct alleged in each count and the evidence presented, the assault count is a lesser included offense of the first degree burglary count, and, thus, under the Double Jeopardy Clause, must merge. Defendant did not raise that issue in his opening brief, and we are persuaded that we should not consider it sua sponte.

Accordingly, we conclude that the trial court considered appropriate factors and did not abuse its discretion when it imposed consecutive sentences.

## V. Ineffective Assistance of Counsel

 Defendant contends that he received ineffective assistance from his state-appointed appellate counsel. Specifically, he argues that appellate counsel submitted an opening brief without his consent and did not include his most meritorious claims. We decline to consider the merits of this contention.

 Defendant raised this issue for the first time in his reply brief, and the People

have not had a chance to respond. Accordingly, we decline to consider this issue. In addition, an ineffective assistance of counsel claim should be raised in a postconviction motion, not on direct appeal. *People v. Kelling,* 151 P.3d 650, 655 (Colo.App.2006) (citing *Ardolino v. People,* 69 P.3d 73, 77 (Colo.2003) ("In light of the considerations potentially involved in determining ineffective assistance, defendants have regularly been discouraged from attempting to litigate their counsels' effectiveness on direct appeal.")).

## VI. Appellate Error

Defendant contends that this court erred when it allowed court-appointed appellate counsel to represent defendant and did not permit him to conduct his own appeal. We disagree.

■ While represented by counsel, defendant filed a motion for withdrawal of alternate defense counsel and leave to proceed pro se. Defendant also filed a motion to strike the opening brief submitted by defense counsel. A division of this court denied defendant's motions because the court does not consider pro se pleadings filed by represented parties. The division advised defendant to direct his concerns to his attorney. After counsel filed a written notice of withdrawal, the division permitted defendant to file a pro se reply brief.

We decline to reconsider the division's ruling.

The judgment and sentence are affirmed.

Judge WEBB and Judge LICHTENSTEIN concur.