FILED
United States Court of Appeals
Tenth Circuit

December 3, 2015

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ANDREW T. PLANCARTE,

     Petitioner - Appellant,

v.

JAMES FALK, Warden; CYNTHIA
COFFMAN, the Attorney General of the
State of Colorado; RICK RAEMISCH, the
Executive Director of the C.D.O.C.,

     Respondents - Appellees.

No. 15-1265
(D.C. No. 1:14-CV-03205-RBJ)
(D. Colo.)

_____

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]
_____

Before **MATHESON**, **MURPHY**, and **PHILLIPS**, Circuit Judges.
_____

Andrew Plancarte was convicted in Colorado state court of first-degree burglary, second-degree kidnapping, and two counts of third-degree assault. After pursuing a direct appeal and state post-conviction relief, he filed a 28 U.S.C. § 2254 application for a writ of habeas corpus in federal court. The district court denied Mr. Plancarte's application and did not grant a certificate of appealability ("COA"). Proceeding pro se,[1]

_____

[*] This order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Because Mr. Plancarte is proceeding pro se, we construe his filings liberally. _See Erickson v. Pardus_, 551 U.S. 89, 94 (2007) (per curiam); _see also United States v._

Continued . . .

Mr. Plancarte seeks a COA from this court. Exercising jurisdiction under 28 U.S.C.

§ 1291, we deny Mr. Plancarte a COA and dismiss this matter.

## I. BACKGROUND

### A. *Arrest and Trial*

On March 25, 2004, a man entered B.T.'s home near the University of Denver

campus and physically attacked her. *People v. Plancarte*, 232 P.3d 186, 189 (Colo. App.

2009). "The man pulled B.T. out the back door, threw her to the ground, repeatedly

punched her, and then fled." *Id.* About 15 minutes later, M.S.—like B.T., a female

student at the university—heard someone come up behind her as she was walking home

from campus. *Id.* The man grabbed M.S.'s waist, punched her, and tried to strangle her

before running off when M.S. yelled for help. *Id.*

Later that night, both women gave statements to the police and created composite

sketches of their attacker. *Id.* at 189, 191. B.T. described him as "as a Hispanic or white

male with a dark complexion, clean shaven with dark, slightly curly or wavy hair, and

approximately 27 to 28 years of age." *Id.* at 191. M.S.'s description was similar: "a

Hispanic or white male with a dark complexion, in his thirties, approximately 5'10" with

wide shoulders and a larger or protruding stomach, and clean shaven with dark hair." *Id.*

Based on the victims' sketches, an anonymous caller identified Mr. Plancarte to police as

a possible suspect. *Id.* at 189.

---

*Pinson*, 584 F.3d 972, 975 (10th Cir. 2009) ("[W]e must construe [a pro se litigant's] arguments liberally; this rule of liberal construction stops, however, at the point at which we begin to serve as his advocate.").

Both B.T. and M.S. picked Mr. Plancarte out of a photographic array consisting of 20 color photographs. *Id.* On May 26, 2004, police arrested Mr. Plancarte and charged him with one count of first degree burglary, two counts of second degree kidnapping, and two counts of third degree assault. *Id.* He moved to suppress the victims' out-of-court identifications, but the trial court found the police's identification procedure was not impermissibly suggestive and therefore permitted the evidence. *Id.* Mr. Plancarte argued at trial that he had an alibi for the night of the attacks. *Id.* The jury was unconvinced and convicted him of first degree burglary, one count of second degree kidnapping, and two counts of third degree assault. *Id.* The court sentenced Mr. Plancarte to 15 years in prison. *Id.*

### B. Direct Appeal and Post-Conviction Proceedings

### 1. Direct Appeal

Mr. Plancarte appealed his convictions and sentence to the Colorado Court of Appeals, arguing (1) the photo array was so suggestive and unreliable as to violate due process, (2) the Government's evidence at trial was insufficient to find him guilty beyond a reasonable doubt, and (3) "the sentences imposed are excessive and too harsh, and the trial court abused its discretion when it did not consider the necessary factors and imposed consecutive rather than concurrent sentences." *Id.* at 189-93. The Court of Appeals affirmed Mr. Plancarte's convictions and sentence, *id.*, and the Colorado Supreme Court denied his petition for certiorari on June 28, 2010, *Plancarte v. People*, No. 10SC126, 2010 WL 2582901 (Colo. June 29, 2010).

2. **State Post-Conviction Proceedings**

On March 24, 2011, Mr. Plancarte filed a motion to correct an illegal sentence under Colorado Rule of Criminal Procedure 35(a). The state district court denied this post-conviction motion on April 5, 2011, and Mr. Plancarte did not appeal.

Five months later, on August 31, 2011, Mr. Plancarte filed a second post-conviction motion in state court, this time under Colorado Rule of Criminal Procedure 35(c). The district court denied the motion, except to the extent it found Mr. Plancarte's conviction for third degree assault merged with his conviction for first degree burglary. The Colorado Court of Appeals denied Mr. Plancarte's appeal in an unpublished order of December 5, 2013, and the Colorado Supreme Court denied certiorari on September 8, 2014.

3. **Federal Habeas**

On November 25, 2014, Mr. Plancarte filed a § 2254 application for a writ of habeas corpus in the U.S. District Court for the District of Colorado. He asserted eight claims for relief: (1) his consecutive sentences violated the Fifth Amendment Double Jeopardy Clause and the Eighth Amendment; (2) the prosecution engaged in misconduct before and during trial; (3) he was completely denied the right to trial counsel when his attorney inadequately argued an alibi defense; (4) the alibi instruction the trial court gave the jury denied Mr. Plancarte his right to be convicted only on proof beyond a reasonable doubt; (5) he was denied effective assistance of appellate counsel on direct review; (6) the state post-conviction court erred by declining to hold an evidentiary hearing; (7) the state courts erroneously concluded the photo array was not unconstitutionally

suggestive; and (8) the Government's evidence was insufficient to prove Mr. Plancarte's guilt beyond a reasonable doubt.

    a. *Claims Dismissed on Non-Merits Grounds*

In an order dated March 10, 2015, the district court held claims one, two, four, and five were procedurally barred because Mr. Plancarte either 1) did not exhaust those claims in state court and would be prohibited from pursuing them by Colorado's rule against successive post-conviction motions, or 2) raised those claims for the first time in his state post-conviction proceedings when they should have been raised on direct appeal. He could not excuse this procedural default, the district court held, because he could not (1) establish cause for the default and resulting prejudice, or (2) demonstrate that failure to consider his claim would result in a fundamental miscarriage of justice. Mr. Plancarte attempted to establish cause by pointing to his appellate counsel's failure to advance meritorious arguments on direct appeal. Such a failure can establish cause for a procedural fault, the district court wrote, but only if that ineffectiveness claim is itself exhausted in state court. Because Mr. Plancarte had not pursued that claim in his state post-conviction proceedings, the "cause and prejudice" exception was not satisfied. And Mr. Plancarte could not point to any new evidence that would establish "actual innocence," making the "fundamental miscarriage of justice" exception unavailable as well.

The district court therefore dismissed claims one, two, four, and five with prejudice.

b. *Claims Dismissed on the Merits*

    i.  <u>Claim 3</u>

As to the ineffectiveness of trial counsel claim, the district court held the state courts had reasonably concluded that counsel's performance was neither deficient nor prejudicial under *Strickland v. Washington*, 466 U.S. 668 (1984). Nor had the state courts unreasonably applied federal law in dismissing Mr. Plancarte's claim that his trial counsel labored under an actual conflict of interest. Finally, the state courts did not err by analyzing Mr. Plancarte's claim under *Strickland*, rather than *United States v. Cronic*, 466 U.S. 648 (1984), which identifies three situations that presumptively amount to a denial of the right to counsel.

    ii.  <u>Claim 6</u>

In addition, the district court held claim six was not cognizable in a federal habeas application because the state post-conviction court's failure to conduct an evidentiary hearing did not raise a question of federal law.

    iii.  <u>Claim 7</u>

The district court determined that "the state appellate court reasonably determined that the pre-trial identification procedure was not impermissibly suggestive so as to give rise to a substantial likelihood of misidentification." ROA at 685 (quotation omitted).

    iv.  <u>Claim 8</u>

Finally, the district court concluded the state courts' application of federal law regarding sufficiency-of-the-evidence challenges and their determination of the relevant facts were both reasonable.

Accordingly, the district court denied Mr. Plancarte's habeas application and dismissed the action with prejudice. Having resolved the application on the existing record, the district court also denied Mr. Plancarte's request for an evidentiary hearing and appointment of counsel.

The district court entered judgment on June 29, 2015. Mr. Plancarte subsequently filed a notice of appeal, which was received by the district court on July 31, 2015.

## II. **DISCUSSION**

Mr. Plancarte failed to exhaust a number of his claims in state court, and they are now defaulted under the anticipatory procedural bar doctrine. He cannot excuse that default through either the "cause and prejudice" or "fundamental miscarriage of justice" exceptions to the exhaustion requirement. Of the claims he has not defaulted, none entitles him to relief on the merits. Because reasonable jurists could not debate the district court's disposition of these claims, we deny a COA and dismiss this matter.

### A. *Jurisdiction*

1. **The Prison Mailbox Rule**

"The filing of a timely notice of appeal is an absolute prerequisite to our jurisdiction" over an application for habeas relief under 28 U.S.C. § 2254. *United States v. Ceballos-Martinez*, 371 F.3d 713, 715 (10th Cir. 2004). "In a civil case, except as provided in Rules 4(a)(1)(B), 4(a)(4), and 4(c), the notice of appeal . . . must be filed with the district clerk within 30 days after entry of the judgment or order appealed from." Fed. R. App. P. 4(a)(1)(A). Under Rule 4(c)(1),

> If an inmate confined in an institution files a notice of appeal in either a civil or a criminal case, the notice is timely if it is deposited in the institution's internal mail system on or before the last day for filing. If an institution has a system designed for legal mail, the inmate must use that system to receive the benefit of this rule. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or by a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

Mr. Plancarte's notice of appeal was not filed until July 31, 2015—more than 30 days after the district court's entry of judgment—and did not contain a declaration or notarized statement that he had deposited the notice in the prison mail system on or before the July 29, 2015 deadline. On August 3, 2015, the Clerk therefore ordered Mr. Plancarte to file proof of compliance with Rule 4(c)(1) within 21 days.

Mr. Plancarte responded on August 26, 2015, with a sworn declaration that he had placed his notice of appeal, along with prepaid postage, in the prison's legal mail system on July 29, 2015. Attached to his declaration was an "Outgoing Restricted Inspection Mail Log," which showed that on July 29, the prison "received" a piece of mail addressed to the U.S. District Court in Denver. Doc. 10297693 at 2 (capitalization omitted). According to the log, that correspondence was "mailed" the following day, July 30, 2015. *Id.* (capitalization omitted). Mr. Plancarte also attached a "Department of Corrections Misc. Withdrawal Ticket," dated July 29, 2015, indicating $1.42 had been removed from his account to pay for "Legal Mail." *Id.* at 3 (capitalization omitted).

Although Mr. Plancarte's notice was not mailed until the 30th, the prison mail log shows he "deposited [it] in the institution's internal mail system on or before the last day for filing"—i.e., July 29 2015. Fed. R. App. P. 4(c)(1). The notice of appeal was

therefore timely, and Mr. Plancarte's filing of that notice does not deprive us of jurisdiction. *Price v. Philpot*, 420 F.3d 1158, 1163-64 (10th Cir. 2005) ("[A] *pro se* prisoner's notice of appeal will be considered timely if given to prison officials for mailing prior to the filing deadline, regardless of when the court itself receives the documents.").

## 2. Certificate of Appealability

A state prisoner may appeal a final order dismissing his § 2254 application only if a court first issues a COA. 28 U.S.C. § 2253(c)(1)(A). To obtain a COA, the prisoner must make "a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). "[U]ntil a COA has been issued federal courts of appeals lack jurisdiction to rule on the merits of appeals from habeas petitioners." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

## B. Mr. Plancarte's Application for COA

Because we conclude reasonable jurists could not debate the district court's denial of Mr. Plancarte's claims, we deny a COA and dismiss this matter.

## 1. Standard of Review

Under the standard governing COAs, "a petitioner must sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Id.* (alteration in original) (quotations omitted). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim," a COA cannot issue unless the petitioner

shows both (1) "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and (2) "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *accord Dulworth v. Jones*, 496 F.3d 1133, 1137 (10th Cir. 2007).

"This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims. In fact, the statute forbids it." *Miller-El*, 537 U.S. at 336. A "court of appeals should not decline the application for a COA merely because it believes the applicant will not demonstrate an entitlement to relief." *Id.* at 337. At the same time, a "prisoner seeking a COA must prove something more than the absence of frivolity or the existence of mere good faith on his or her part." *Id.* at 338 (quotations omitted).

2. **Analysis**

Disentangling the issues raised in Mr. Plancarte's opening brief is not easy. He appears to challenge the district court's ruling on the following grounds: (1) Mr. Plancarte's procedural default on claims one, two, four, and five should be excused because his trial and appellate counsel were ineffective and because the prosecution engaged in misconduct at trial; (2) he should have prevailed on the merits on claims two (prosecutorial misconduct), three (ineffective assistance of trial counsel), four (jury instruction on an alibi defense), and seven (suggestibility of the photo array); and (3) the

- 10 -

district court erred in not ordering the state court to conduct an evidentiary hearing and in failing to conduct an evidentiary hearing of its own.[2]

    a. *Background Law*

        i. <u>Exhaustion and Procedural Default</u>

A state prisoner cannot receive federal habeas relief unless he "has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A).

"Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *Thacker v. Workman*, 678 F.3d 820, 838-39 (10th Cir. 2012) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999)) (citing 28 U.S.C. § 2254(c)). This means "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845.

Courts "ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies, *i.e.,* whether he has fairly presented his claims to the state courts." *Id.* at 848 (emphasis in original).

> "Fair presentation" requires more than presenting "all the facts necessary to support the federal claim" to the state court or articulating a "somewhat similar state-law claim." "Fair presentation" means that the petitioner has

---

[2] As explained below, we conclude Mr. Plancarte procedurally defaulted claims two and four and cannot excuse that default. We therefore limit our discussion of the merits of his application to claims three, six, and seven.

raised the "substance" of the federal claim in state court. The petitioner need not cite "book and verse on the federal constitution," but the petitioner cannot assert entirely different arguments from those raised before the state court.

*Bland v. Sirmons*, 459 F.3d 999, 1011 (10th Cir. 2006) (quoting *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam), and *Picard v. Connor*, 404 U.S. 270, 278 (1971)).

"Generally, a federal court should dismiss unexhausted claims without prejudice so that the petitioner can pursue available state-court remedies. However, if the court to which Petitioner must present his claims in order to meet the exhaustion requirement would now find those claims procedurally barred, there is a procedural default for the purposes of federal habeas review." *Id.* at 1012 (citations and quotations omitted). This is known as an anticipatory procedural bar, resulting in procedural default.

Ordinarily, "we do not address issues that have been defaulted in state court on an independent and adequate state procedural ground, unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice." *Cummings v. Sirmons*, 506 F.3d 1211, 1224 (10th Cir. 2007) (quotation omitted).

"Cause for a procedural default exists where something *external* to the petitioner, something that cannot fairly be attributed to him[,] . . . impeded [his] efforts to comply with the State's procedural rule." *Maples v. Thomas*, 132 S. Ct. 912, 922 (2012) (alterations, ellipsis, and emphasis in original) (quotations omitted). "For example, a showing that the factual or legal basis for a claim was not reasonably available to counsel, . . . or that some interference by officials . . . made compliance impracticable,

- 12 -

would constitute cause under this standard." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (ellipses in original) (quotations omitted).

"[I]n certain circumstances counsel's ineffectiveness in failing properly to preserve the claim for review in state court will suffice." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).  But a "claim of ineffective assistance . . . must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Id.* (quotations omitted).

As for a fundamental miscarriage of justice, the Supreme Court has held that "a convincing showing of actual innocence enable[s] habeas petitioners to overcome a procedural bar to consideration of the merits of their constitutional claims." *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013).  "The miscarriage of justice exception . . . applies to a severely confined category:  cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" *Id.* at 1933 (brackets in original) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).

ii.  Reviewing the Merits of State Habeas Applications Under AEDPA

A prisoner who has properly exhausted his state court remedies still faces several hurdles to obtaining relief on the merits of his claims.  First, "it is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts." *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (emphasis in original) (citing 28 U.S.C. § 2254(a)).  Accordingly, "federal habeas corpus relief does not lie for errors of state law." *Id.* (quotation omitted).

Second, even on questions of federal law, federal courts' review of state court determinations is highly deferential. Under the Anti-Terrorism and Effective Death Penalty Act of 1996, federal courts may grant habeas relief only if the state court's adjudication of a claim on the merits

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state-court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [it]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (quotations omitted).

"For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (emphasis in original) (quotations omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* (quotations omitted). "If this standard is difficult to meet, that is because it was meant to be. . . . Section 2254(d) reflects the view that habeas corpus is a guard against extreme

- 14 -

malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.* at 102-03 (quotations omitted).

### b. *Mr. Plancarte's Claims*

#### i. Claims One, Two, Four, and Five—Procedural Default

According to Mr. Plancarte, the district court erred by finding he could not overcome his procedural default on claims one, two, four, and five. He does not contest that these claims are subject to procedural default, but he advances two arguments to excuse his default.[3]

First, Mr. Plancarte contends both his trial counsel and his counsel on direct appeal were constitutionally ineffective. Specifically, he claims his trial counsel "negligently acceded to" the prosecutor's and trial judge's "collusive pursuit to direct a verdict for the State," Aplt. Br. at 7, and failed to present an adequate alibi defense at trial. He also argues the district court "invalidly divested" him of his "'counsel of choice' in breach of the Sixth Amendment." *Id.* at 11. And his appellate counsel, he argues, failed to raise some of his most compelling grounds for reversal, such as prosecutorial misconduct.

Even assuming Mr. Plancarte's trial counsel was ineffective, her ineffectiveness does not bear on whether Mr. Plancarte can show "cause" and "prejudice" for failing to exhaust his claims on direct appeal or in state post-conviction proceedings. Counsel's

---

[3] Mr. Plancarte's only attempt to argue against default is a summary assertion that the "district court simply erred in finding that Claim Two (prosecutorial misconduct) was procedurally barred." Aplt. Br. at 19. He offers no law or facts to support this position.

actions at trial are independent from, and are logically unconnected to, whether Mr. Plancarte adequately pursued remedies available to him only once trial had concluded. Her conduct is therefore not a cause that can excuse Mr. Plancarte's procedural default.

In some cases, ineffectiveness of appellate counsel can establish cause for a procedural default. *Edwards*, 529 U.S. at 451. But as the district court observed in its March 10, 2015 order, "the claim that appellate counsel was constitutionally ineffective must itself be exhausted in the state courts." ROA at 459 (citing *Edwards*, 529 U.S. at 453). Mr. Plancarte does not suggest the district court was mistaken when it found he failed to exhaust a claim of appellate counsel's ineffectiveness in his state post-conviction motions. Appellate counsel's ineffectiveness therefore cannot excuse Mr. Plancarte's procedural default.

Second, Mr. Plancarte may be arguing his default should be excused because denying his habeas application would result in a fundamental miscarriage of justice. Under *McQuiggin* and *Schlup*, an applicant seeking to invoke this exception to procedural default based on claims of actual innocence must present new evidence making it more likely than not that no reasonable juror would convict him. The district court found Mr. Plancarte had presented no new evidence, other than "conclusory assertion[s]" of innocence. ROA at 460. On appeal, Mr. Plancarte points to nothing in the record to suggest the district court's conclusion was in error. Mr. Plancarte therefore cannot pass through the *McQuiggin/Schlup* innocence "gateway" to escape his procedural default. *See Cummings*, 506 F.3d at 1224 (holding petitioner could not overcome

procedural bar because he "failed to come forward with any such [new] evidence, and thus cannot establish his claim of actual innocence").

Mr. Plancarte has not shown that reasonable jurists could debate the district court's determination that claims one, two, four, and five were procedurally defaulted. We deny a COA on these claims.

ii. Claims Three, Six, and Seven—Merits

Mr. Plancarte appears to contend he was entitled to relief on the merits of claims two (prosecutorial misconduct), three (ineffectiveness of trial counsel), four (the trial court's alibi instruction), and seven (the photo array). For the reasons explained directly above, the district court did not need to reach the merits of claims two and four, which Mr. Plancarte procedurally defaulted. We therefore consider only the district court's merits resolution of claims three and seven.

1) Claim Three: Ineffectiveness of Trial Counsel

The district court sorted Mr. Plancarte's numerous claims of attorney error into three categories. According to the district court, Mr. Plancarte

> assert[ed] that counsel failed to: (a) conduct an adequate investigation of an alibi defense and to secure videotapes of business premises that would have corroborated the defense; (b) tender a theory of the case instruction, but instead accept[ed] the instruction proffered by the prosecution; and (c) move for a judgment of acquittal on the basis of alibi. [Mr. Plancarte] further maintain[ed] that defense counsel labored under an actual conflict of interest that prevented counsel from adequately representing him at trial.

ROA at 671 (citations omitted). The district court laid out the *Strickland* standard and reviewed the state courts' application of that standard to Mr. Plancarte's various claims.

- 17 -

It also discussed *Cronic* and determined the state courts had not erred by failing to analyze Mr. Plancarte's claims under the rubric articulated in that case.

On appeal, Mr. Plancarte asserts he suffered an "actual denial of counsel under *Cronic*'s 'presumptive prejudice' criterion" because after a "fifteen-month period where the State flagrantly denied a vested right to counsel outright, the Court conceded, then handpicked alternate defense counsel," who failed, among other things, to present a robust alibi defense. Aplt. Br. at 11. Mr. Plancarte has offered no factual background to assist us in understanding this claim. He has pointed to nothing in the record to suggest the trial court's replacement of his initial counsel with an alternate rose to the level of a *Cronic* violation. The district court concluded the state court's failure to apply *Cronic* was not contrary to and did not involve an unreasonable application of clearly established federal law under 28 U.S.C. § 2254(d)(1). Mr. Plancarte has not shown reasonable jurists could debate the correctness of this conclusion.

To the extent Mr. Plancarte also challenges the district court's determination that the state courts reasonably applied *Strickland*, he has failed to develop that argument with sufficient argument or legal authority. *See Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994) ("[A] few scattered statements . . . [and] perfunctory complaints fail to frame and develop an issue sufficient to invoke appellate review."). He does not identify the errors in the district court's conclusion that trial counsel's performance was neither deficient nor prejudicial. Nor does he address in any way the deference federal habeas courts owe to state court adjudications of federal constitutional claims. Notwithstanding his pro se status, Mr. Plancarte has therefore failed to carry his burden of showing

- 18 -

reasonable jurists could debate whether the district court erred. *See Pinson*, 584 F.3d at 975. In any event, our review of the record reveals no substantial denial of Mr. Plancarte's constitutional rights.

Reasonable jurists could not debate the district court's resolution of claim three, and we therefore deny a COA on this issue.

2) Claim Six: State Court Evidentiary Hearing

Mr. Plancarte appears to argue the district court erred by dismissing claim six, which challenged the state post-conviction court's failure to hold an evidentiary hearing. As the district court explained, a claim that state courts misapplied state law relating to post-conviction procedures does not present a federal question that is cognizable under § 2254. *See Sellers v. Ward*, 135 F.3d 1333, 1339 (10th Cir. 1998) ("Assuming the contention is correct and the Oklahoma court mistakenly construed the [post-conviction] statute, the error is one of state law not cognizable in habeas corpus because federal habeas corpus relief does not lie for errors of state law." (quotations omitted)). Mr. Plancarte has not demonstrated that reasonable jurists could debate whether he made a substantial showing of the denial of a constitutional right.

To the extent Mr. Plancarte also argues the district court erred by denying his request for a federal evidentiary hearing, he fares no better. Under § 2254(e)(2):

> If [an] applicant has failed to develop the factual basis of a claim in State court proceedings, the [federal district] court shall not hold an evidentiary hearing on the claim unless the applicant shows that
> (A) the claim relies on—
> > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Mr. Plancarte does not identify any newly retroactive rule of constitutional law that would entitle him to an evidentiary hearing, nor does he maintain any of the factual allegations in his habeas application could not previously have been discovered through the exercise of due diligence.

Accordingly, reasonable jurists could not debate the district court's determination that there has been no showing, much less a "substantial" showing, of the denial of a constitutional right. We therefore deny a COA on claim six.

### 3) Claim Seven: The Suggestiveness of the Photo Array

The district court recited the due process standard for assessing photo arrays, exhaustively reviewed the state courts' consideration of Mr. Plancarte's claim, ROA at 681-85, and determined "the state appellate court reasonably determined that the pre-trial identification procedure was not impermissibly suggestive so as to give rise to a substantial likelihood of misidentification," *id.* at 685 (quotation omitted). Mr. Plancarte does not directly challenge that conclusion. Instead, he asserts the victims' identifications of him were "specious" and "attained via contrived methods." Aplt. Br. at 5. Specifically, he seems to suggest a local newspaper reporter conspired with the Denver police and the district attorney to pressure the victims into falsely identifying Mr. Plancarte. He further claims B.T. and M.S. picked Mr. Plancarte out of the array only

after "being prodded by the detective and/or coached via family members off-camera."

Aplt. Br. at 25.

Mr. Plancarte offers no evidence to substantiate these allegations. He therefore fails to demonstrate that reasonable jurists could debate whether the district court correctly concluded the state courts' decisions were not contrary to and did not involve an unreasonable application of clearly established federal law under 28 U.S.C. §2254(d)(1). We therefore deny a COA on claim seven.

## III.  CONCLUSION

We deny a COA on all issues and dismiss this matter. We also deny Mr. Plancarte's motion to proceed *in forma pauperis*.

ENTERED FOR THE COURT


Scott M. Matheson, Jr.
Circuit Judge